[Cite as *State v. Johnson*, 2022-Ohio-81.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110347 |
| v. | : | |
| ERIC JOHNSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 13, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-12-567736-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Eric Johnson ("Johnson") appeals from the denial of his third petition for postconviction relief without the benefit of a hearing. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} The underlying case against Johnson arose from the aggravated robbery, kidnapping, and attempted murder of James Keith ("Keith") on August 26, 2012. This court summarized the facts of these incidents in Johnson's direct appeal as follows:

> At trial, through the testimony of six witnesses, the evidence established that in the early hours of August 26, 2012, James Keith was robbed and shot multiple times. As he laid in the middle of the street, a passing motorist stopped and summoned EMS, who arrived to find Keith's bloody body. The EMS transported Keith to MetroHealth Hospital where he remained for more than a month.

> Detective David Harris of the Cleveland Police Department Fourth District testified that he and his partner, Detective Brian Todd, immediately responded to the scene, where they found Keith screaming that he had been shot. Detective Harris testified that they were unable to ascertain who had shot Keith, because he just kept repeating hysterically that he had been shot and then passed out.

> Detective James Brooks, also of the Cleveland Police Department's Fourth District, testified that he went to see Keith at the hospital almost a month later. Detective Brooks testified that Keith indicated that "E" shot him and that "Junior" was with "E." Detective Brooks testified that Keith indicated that "E" and "Junior" were from the Garden Valley Estates. Further investigation revealed that "E" was Johnson's nickname and "Junior" was codefendant John Alexander's nickname.

> Detective Brooks, using a procedure known as blind administration, created photo arrays that Detective James Bellanca later administered to Keith. Detective Brooks stated that blind administration is used to remove any signs of bias when the photo lineup is presented to the victim or witness. Detective Bellanca did not know which of the photographs in the array, if any, depicted Johnson or his codefendant and that he was not present when Detective Bellanca administered the photo arrays.

> After being shown the photo arrays, Detective Brooks said that Keith identified the photo of Johnson as his assailant, circled Johnson's photo, signed his name, and indicated that he was certain that Johnson

was the man who robbed and shot him multiple times. Keith also identified Alexander as Johnson's codefendant. In addition, Keith made an in-court identification of Johnson.

Keith testified that he had gone to the Garden Valley Estates to borrow money from his friend, Mya. After picking up the money, he started to walk home through a field near East 93rd Street and Union Avenue, when he saw Johnson and Alexander sitting in a black Volkswagen Jetta. Keith stated that he knew Johnson, but only knew his nickname "E" and knew Alexander since he was 14 years old, but only by his nickname "Junior."

Keith testified that shortly after he had passed the Volkswagen Jetta, he felt a gun in the back of his head, turned around, and looked in Johnson's eyes. Johnson proceeded to hit him in the head with the gun and said: "Don't you know this is a robbery?" Keith looked again and saw Alexander standing a couple feet away.

Keith said that Johnson kept asking if Keith knew where he was, which is gang parlance indicating that Keith was in the wrong territory. Johnson then ordered Keith to empty his pocket and he complied, giving up $40 and two cell phones.

After Keith gave up his property, Johnson ordered him to run, but then began shooting. A bullet struck Keith's leg, he lost balance and fell near a pole. Johnson then shot him multiple times in his stomach from close range and he was looking at Johnson the entire time. Johnson and Alexander then fled in the Volkswagen Jetta.

Keith laid on the ground thinking he was going to die, but decided to crawl into the middle of the street. He said a motorist eventually pulled alongside him and called for an ambulance. Keith later passed out and when he woke up in the hospital, the staff told him he had been in a coma.

*State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 5-14 ("*Johnson I*").

{¶ 3} Following a jury trial, Johnson was found guilty of all counts and corresponding firearm specifications. The trial court merged the kidnapping and aggravated robbery charges for sentencing, and the court also merged the felonious

assault and attempted murder charges for sentencing.  The state elected to sentence Johnson on the aggravated robbery and attempted murder offenses.  The court sentenced Johnson to 21 years in prison.

**{¶ 4}**  Johnson appealed, raising six assignments of error challenging his conviction and sentence, and this court unanimously affirmed his conviction and sentence.  *Johnson* I.

**{¶ 5}**  On December 3, 2013, Johnson filed his first petition for postconviction relief, alleging that his trial counsel was ineffective for failing to investigate an alibi witness and failing to communicate a plea deal.  Johnson attached an affidavit from his trial counsel to his petition.  On December 11, 2013, the state filed a brief in opposition, arguing that Johnson's petition was untimely and that Johnson had failed to present sufficient operative facts to support his ineffective assistance of counsel claim.  On January 6, 2014, the trial court denied Johnson's petition without a hearing.

**{¶ 6}**  On February 27, 2014, Johnson filed a motion to supplement his December 2013 petition.  On March 6, 2014, the state filed a motion to dismiss Johnson's supplemental petition.  On March 12, 2014, the trial court granted the state's motion and dismissed Johnson's petition for postconviction relief.

**{¶ 7}**  In May 2014, Johnson sought findings of fact and conclusions of law, which the trial court entered in September 2014.  In its findings, the trial court stated that (1) Johnson failed to demonstrate that his trial counsel's performance was deficient and that he was prejudiced; (2) Johnson's claim was refuted by his trial

counsel's affidavit and the transcripts of the trial court proceedings; (3) Johnson failed to sustain his burden of demonstrating that there had been a denial or infringement of his rights so as to render the judgment void or voidable; and (4) Johnson was not entitled to a hearing because he failed to demonstrate that there were substantive grounds for relief. Johnson appealed, and this court unanimously affirmed the trial court's judgment. *State v. Johnson*, 8th Dist. Cuyahoga No. 101993, 2015-Ohio-1649, ¶ 1 ("*Johnson* II").

{¶ 8} On June 15, 2017, Johnson filed a motion to file a successive petition to vacate or set aside his conviction. Specifically, Johnson argued that the Ohio Supreme Court's decision in *State v. Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016, impacted his convictions by holding that attempted felony murder was not a cognizable crime in Ohio. On September 29, 2017, the state filed a brief in opposition to Johnson's motion. On October 2, 2017, the trial court denied Johnson's motion. Johnson appealed, and this court unanimously affirmed the decision of the trial court, holding that Johnson's second petition was untimely and the *Nolan* decision had no bearing on Johnson's conviction because Nolan dealt with an attempted felony murder conviction. *State v. Johnson*, 8th Dist. Cuyahoga No. 106670, 2018-Ohio-3799 ¶ 2 ("*Johnson* III").

{¶ 9} On January 22, 2018, Johnson filed an application to reopen his direct appeal, claiming that his appellate counsel was ineffective for failing to argue that attempted murder was not a crime in Ohio during the relevant period. This

court unanimously denied Johnson's application. *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2018-Ohio-952 ("*Johnson* IV").

{¶ 10} On November 13, 2020, Johnson filed a third successive petition for postconviction relief, the subject of the instant appeal. Johnson submitted an affidavit of Keith, the victim in Johnson's case, in which Keith stated that he was pressured to testify against Johnson even though Keith was not certain that Johnson had actually shot him. On January 15, 2021, the state filed a brief in opposition to Johnson's petition. On February 17, 2021, the trial court denied Johnson's petition without a hearing.

{¶ 11} Johnson appeals, presenting one assignment of error for our review:

> The trial court violated Appellant's constitutional rights to due process and a fair trial pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution by denying Appellant's petition for postconviction relief and/or motion for new trial without an evidentiary hearing where a witness recanted his identification of appellant which identification was crucial to the state's ability to obtain a conviction.

**Legal Analysis**

{¶ 12} In Johnson's sole assignment of error, he argues that his constitutional rights were violated because the state's main witness now believes that he misidentified Johnson. According to Johnson, Keith's affidavit provides clear and convincing evidence that Johnson was misidentified as the assailant in this case, and but for that misidentification, Johnson would not have been convicted.

{¶ 13} A petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *State v. Lenard*, 8th Dist.

Cuyahoga No. 108646, 2020-Ohio-1502, ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). To prevail on a petition for postconviction relief, a defendant must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 14} It is well settled that a hearing is not automatically required whenever a petition for postconviction relief is filed. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in considering a petition for postconviction relief, a trial court acts as a gatekeeper in determining whether a defendant will receive a hearing. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51. A trial court may dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶ 15} This court reviews the trial court's decision granting or denying a postconviction petition for an abuse of discretion. *State v. Kent*, 8th Dist. Cuyahoga No. 94562, 2010-Ohio-6368, ¶ 8, citing *Gondor* at ¶ 52. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Gondor* at ¶ 16, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Additionally, we must give deference to the trial court's credibility determinations. *State v. Mackey*, 2018-Ohio-516, 106 N.E.3d 241, ¶ 8 (2d Dist.), citing *Gondor* at ¶ 47.

**{¶ 16}** As an initial matter, we emphasize that this is Johnson's third attempt to obtain postconviction relief. Additionally, pursuant to R.C. 2953.21(A)(2), a petition for postconviction relief must be filed within 365 of the date on which the trial transcript is filed in the petitioner's direct appeal. In Johnson's direct appeal, the trial transcripts were filed on June 3, 2013. Johnson filed the underlying petition for postconviction relief on November 13, 2020, over six years later. Therefore, pursuant to R.C. 2953.21(A)(2), this petition was untimely.

**{¶ 17}** R.C. 2953.23(A) provides that a court may entertain an untimely petition for postconviction relief in certain circumstances. In relevant part, R.C. 2953.23(A) states:

> (1) Both of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted.

Johnson asserts that his petition satisfies R.C. 2953.23(A)(1)(a) because Keith's recantation of his identification of Johnson did not occur until 2020. Therefore, Johnson argues that the information on which he based his petition was unavailable to him prior to 2020. Further, Johnson asserts that Keith's affidavit establishes that

his constitutional rights were violated by clear and convincing evidence, but he does not support this assertion.

**{¶ 18}** We disagree that Johnson was unavoidably prevented from discovering Keith's alleged recantation. This is not a case in which a previously unknown witness comes forward with new information. Keith was the victim in this case, he cooperated in the investigation, and he testified at Johnson's trial. Further, Keith's affidavit states, in part:

> I have spent the past seven years thinking about this case and my testimony. On a daily basis I have felt an incredible weight on my shoulders because I believe I have identified the wrong person as having committed the crimes against me.

Keith's affidavit is dated August 26, 2020, and Johnson filed his petition on November 13, 2020. Johnson has not explained, and the record does not indicate, why, with reasonable diligence, he could not have discovered Keith's purported misgivings about his trial testimony. While we acknowledge that Johnson is imprisoned, nothing in the record indicates why it was impossible for him to have contacted Keith prior to August 2020, nor does the record contain any indication that Keith would have refused or been otherwise unable to prepare an affidavit prior to August 2020. To the contrary, Keith's affidavit suggests whatever doubts he has about his identification of Keith, he has had them for seven years. Therefore, Johnson failed to meet his burden of establishing that he was unavoidably prevented from discovering the basis for his petition prior to August 2020.

{¶ 19} Further, even if Johnson had been unavoidably prevented from discovering the facts upon which he based his claim for postconviction relief, he has failed to establish that Keith's affidavit somehow amounts to a constitutional error at trial pursuant to R.C. 2953.23(A)(1)(b). Generally, newly discovered evidence that purportedly recants testimony given at trial is "looked upon with the utmost suspicion." *State v. Nash*, 8th Dist. Cuyahoga No. 87635, 2006-Ohio-5925, ¶ 10. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, ¶ 29, citing *State v. Jones*, 10th Dist. Franklin No. 06AP-62, 2006-Ohio-5953, citing *United States v. Earles*, 983 F.Supp. 1236, 1248 (N.D. Iowa 1997). Therefore, "there must be some compelling reason to accept a recantation over testimony given at trial." *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 13.

{¶ 20} In making credibility determinations in the context of assessing an affidavit filed in support of a petition for postconviction relief, the trial court should consider all relevant factors, including

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*State v. Watson*, 12th Dist. Butler No. CA2016-08-159, 2017-Ohio-1403, ¶ 27, quoting *State v. Calhoun*, 86 Ohio St.3d 279, 285, 714 N.E.2d 905 (1999). Further,

a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. *Id.*

{¶ 21} Here, the trial judge who denied Johnson's third petition for postconviction relief was the same judge who presided over his trial. At trial, Keith testified that he had known Johnson prior to the 2012 shooting, that he recognized the shooter as Johnson, that he saw Johnson clearly, and that he "looked [Johnson] straight in his eyes." Therefore, the court, in its discretion, was able to assess the credibility of Keith's trial testimony — in which he stated that he clearly saw his assailant and identified Johnson, relative to the statements in his affidavit — in which he stated his belief that he identified the wrong person at trial. While Keith's affidavit mentions that he felt pressured by a detective to testify against Johnson, his affidavit does not state that his trial testimony was false. Further, because "'evidence of perjury, without proof of knowledge on the part of the prosecution of that perjury does not implicate constitutional rights,'" such a claim "'does not support a petition for post-conviction relief.'" (Citations omitted.) *State v. Mackey*, 2018-Ohio-516, 106 N.E.3d 241, ¶ 12 (2d Dist.), quoting *State v. Parker*, 2d Dist. Montgomery No. 25518, 2013-Ohio-3177, ¶ 19, citing *State v. Clark*, 2d Dist. Montgomery No. 16463, 1998 Ohio App. LEXIS 2326 (May 29, 1998). Therefore, we reiterate that Johnson has not articulated a constitutional error at trial, and thus, has not satisfied R.C. 2953.23(A)(1)(b).

{¶ 22} For these reasons, we cannot conclude that the trial court abused its discretion in denying Johnson's untimely successive petition for postconviction relief.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
EMANUELLA D. GROVES, J., DISSENTS WITH SEPARATE OPINION

EMANUELLA D. GROVES, J., DISSENTING:

{¶ 24} Respectfully, I dissent from the majority opinion.

{¶ 25} R.C. 2953.21, the statutory framework for determining whether a hearing is necessary for postconviction actions, does not expressly mandate a hearing for every petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). The pivotal question is whether, upon consideration of the petition, all the files and records pertaining to the underlying proceedings, and any supporting evidence, the petitioner has set forth "sufficient operative facts to establish

substantive grounds for relief." *State v. Tucker*, 8th Dist. Cuyahoga No. 90777, 2008-Ohio-5746, ¶ 23, citing *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. If the petition and the files and records show that the petitioner is not entitled to relief, the court may dismiss the petition without an evidentiary hearing. *Id.*; R.C. 2953.21(C).

{¶ 26} In my view, still to be resolved, is the very narrow, yet critical issue of determining whether Johnson was unavoidably prevented from discovering what Keith, the victim in this case, averred as follows:

> I have spent the past seven years thinking about this case and my testimony. On a daily basis I have felt an incredible weight on my shoulders because I believe I have identified the wrong person as having committed the crimes against me.

{¶ 27} Not being unmindful that a witness's attempt to recant testimony is inherently suspect, *Taylor v. Ross*, 150 Ohio St. 448, 83 N.E.2d 222 (1948), paragraph three of the syllabus, but the rush to judgment should be tempered by the observation that "a trial court should give due deference to affidavits sworn under oath and filed in support of the petition." *Calhoun*, 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999). "Affidavits therefore enjoy a presumption of credibility, which may be rebutted only when the applicable factors in *Calhoun* strongly support a contrary holding." *Id.*, *State v. Thrasher*, 2d Dist. Greene No. 06CA0069, 2007-Ohio-674, ¶ 31.

{¶ 28} In concluding that Johnson failed to meet his burden of establishing that he was unavoidably prevented from discovering the basis of his petition prior to August 2020, the majority opinion, at ¶ 18, states

> [w]hile we acknowledge that Johnson is imprisoned, nothing in the record indicates why it was impossible for him to have contacted Keith prior to August 2020, nor does the record contain any indication that Keith would have refused or been otherwise unable to prepare an affidavit prior to August 2020.

*Id.*

{¶ 29} However, when viewed through the lens that affidavits enjoy a presumption of credibility and, in the context of a victim plagued by thoughts that he has misidentified his assailant, a hearing would have been beneficial to shed light or answer the very questions the majority readily acknowledges are missing from the record.

{¶ 30} Until these answers no longer elude us, there can be no final constitutional disposition of the petitioner's conviction. Accordingly, I would reverse the dismissal of the petition and remand the cause for a hearing to determine whether, in fact, Johnson was unavoidably prevented from discovering the victim's misgivings prior to August 2020.