NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-134

THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Johnson*, Slip Opinion No. 2024-Ohio-134.]**

*Criminal law—Postconviction relief—R.C. 2953.21 and 2953.23—Recantation evidence—Trial court could have no jurisdiction to entertain untimely, successive petition for postconviction relief unless petitioner established (1) that he was unavoidably prevented from timely discovering that victim had doubts about victim's trial testimony and (2) that he would not have been convicted but for constitutional error at trial—R.C. 2953.23 requires a petitioner to submit evidence of specific facts beyond supporting affidavit's date to explain why petitioner was unable to timely obtain an affidavit from recanting witness—A conviction based on false testimony is not a constitutional violation unless the state had knowledge of testimony's falsity—Court of appeals' judgment affirmed.*

(No. 2022-0488—Submitted April 18, 2023—Decided January 18, 2024.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 110347, 2022-Ohio-81.

_____

**DETERS, J.**

{¶ 1} Ohio law permits a person convicted of a criminal offense to petition the trial court to vacate his conviction when he believes "there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a)(i). But the statutory scheme governing such postconviction relief limits offenders to one petition and circumscribes the time for filing. R.C. 2953.23 and 2953.21(A)(2). A trial court generally has no jurisdiction to consider an untimely or successive petition. *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 35-36, 38. This jurisdictional bar, however, is not insurmountable. A petitioner can overcome the bar if he shows that he was "unavoidably prevented" from discovering the facts on which his claim relies and that but for constitutional error at trial, he would not have been convicted. R.C. 2953.23(A)(1); *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 20.

{¶ 2} Years after a jury found appellant, Eric Johnson, guilty of attempted murder and various other offenses, he invoked the postconviction-relief statutes and petitioned the trial court in a bid to have his convictions vacated. His petition was untimely and successive. To satisfy the jurisdictional requirements, Johnson relied on an affidavit of the victim in which the victim called into question his identification of Johnson as the assailant soon after the attack and at trial. Was that evidence sufficient to rebut Ohio's general prohibition on untimely, successive postconviction petitions?

{¶ 3} The trial court and the Eighth District Court of Appeals said no. We agree. Based on the plain language of Ohio's postconviction statutes, Johnson bore the burden of proving not only that he was prevented, but that he was *unavoidably*

prevented, from timely discovering the victim's recantation. Reference to the date that such an affidavit was executed or provided does not, standing alone, satisfy his burden. Because Johnson provided no additional evidence as to why he could not timely obtain an affidavit from the witness, we affirm the Eighth District's judgment.

## I. BACKGROUND

### A. Johnson is convicted following a jury trial

{¶ 4} While walking in Cleveland during the early morning of August 26, 2012, James Keith was robbed and shot. As the Eighth District noted below, Keith told police that the shooter was an acquaintance that he knew as "E," though he did not know E's given name. 2022-Ohio-81, ¶ 2. Police obtained a photograph of the person known as "E" and prepared a photo array with him in it. Keith viewed the photo array and identified Johnson as E.

{¶ 5} Johnson was indicted on seven counts relating to the attack on Keith: one count of kidnapping, two counts of aggravated robbery, two counts of felonious assault, one count of attempted murder, and one count of petty theft. Following a jury trial during which Keith again identified Johnson as the assailant, the jury found Johnson guilty on all counts. He was sentenced to an aggregate prison term of 21 years. The Eighth District affirmed Johnson's convictions on direct appeal. *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 1-2, 74.

### B. Johnson's postconviction proceedings

{¶ 6} Johnson's efforts to obtain postconviction relief began while his direct appeal was pending. The trial court denied Johnson's first petition for postconviction relief, which alleged that he had received ineffective assistance of counsel. *State v. Johnson*, 8th Dist. Cuyahoga No. 101993, 2015-Ohio 1649, ¶ 5-6. The Eighth District affirmed. *Id.* at ¶ 25-26. In 2017, Johnson attempted to file a second petition for postconviction relief, alleging that his attempted-felony-murder offense was not a cognizable offense in Ohio. *State v. Johnson*, 8th Dist.

Cuyahoga No. 106670, 2018-Ohio-3799, ¶ 6. That petition was both untimely and successive, and the trial court denied Johnson's motion for leave to file the petition. *Id.* at ¶ 7. The Eighth District affirmed that judgment. *Id.* at ¶ 12-13.

{¶ 7} Johnson's third petition for postconviction relief, filed on November 13, 2020, is the subject of this appeal. This time, Johnson claimed that Keith had recanted his trial testimony identifying Johnson as his attacker. In a handwritten affidavit dated August 26, 2020, Keith distanced himself from his trial testimony. He stated in the affidavit that his "only recollection of [his] assailant [was] that [the assailant] was an African American man with gold teeth" and that he does not "have much of a memory of the night of the incident after being placed in the ambulance." Commenting on his trial testimony, he explained in the affidavit that he had "felt pressured by [a police detective] to * * * testify against Mr. Johnson even though [he] wasn't sure [Johnson] was the person who committed these crimes against [him]." And he revealed that he believes that he "identified the wrong person" as his attacker and that he has had doubts about his trial testimony for "the past seven years."

{¶ 8} The trial court denied Johnson's petition without a hearing, and the court of appeals affirmed that decision. 2022-Ohio-81 at ¶ 22-23. We accepted jurisdiction over Johnson's appeal to address the following proposition of law:

> A defendant's rights to due process of law and a fair trial pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution are violated when the trial court denies a defendant's petition for postconviction relief based on newly discovered evidence and is in contravention to the precedent recently established by this Court's recent decision in *State v. Bethel*, [167 Ohio St.3d 362,] 2022-Ohio-783[, 192 N.E.3d 470].

*See* 167 Ohio St.3d 1490, 2022-Ohio-2788, 193 N.E.3d 563.

## II. ANALYSIS

### A. Ohio's postconviction-petition scheme

{¶ 9} In Ohio, "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" is permitted to "file a petition in the court that imposed [the] sentence, * * * asking the court to vacate or set aside the judgment or sentence." R.C. 2953.21(A)(1)(a). But a person has a limited time within which to do so. "Except as otherwise provided in [R.C. 2953.23], a petition * * * shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *." R.C. 2953.21(A)(2)(a).[1]

{¶ 10} A trial court does not have subject-matter jurisdiction to adjudicate a postconviction petition that is untimely—i.e., filed outside the statutory deadline under R.C. 2953.21(A)(2)—or successive—i.e., a second or subsequent petition. *See Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, at ¶ 36, 38. There are two exceptions to this jurisdictional bar. *See* R.C. 2953.23(A)(1) and (2). One is relevant here. A trial court may entertain an untimely or successive petition if "the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and "[t]he petitioner shows by clear and convincing evidence that, but for

---

1. At the time of Johnson's convictions, the deadline for filing a petition for postconviction relief was 180 days, not 365. *See* former R.C. 2953.21(A)(2), 2010 Sub.S.B. No. 77. The shorter deadline makes no material difference in this case because Johnson's petition was filed well after the statutory deadline regardless of whether it was 180 days or 365.

constitutional error at trial, no reasonable factfinder would have found the petitioner guilty."[2]  R.C. 2953.23(A)(1)(a) and (b).

{¶ 11} "We review de novo whether the trial court had subject-matter jurisdiction to entertain [a] petition [for postconviction relief]."  *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 20, citing *Apanovitch* at ¶ 24.

### B.  Johnson's petition did not satisfy R.C. 2953.23(A)(1)

{¶ 12} The petition for postconviction relief at issue was untimely and successive under R.C. 2953.21(A): it was Johnson's third petition for postconviction relief under R.C. 2953.21, and it was filed outside the statutory deadline following the filing of the trial-court transcript in Johnson's direct appeal of his convictions. Accordingly, the trial court had no jurisdiction to consider the petition unless (1) Johnson established that he was unavoidably prevented from discovering Keith's recantation before the statutory deadline *and* (2) he showed "by clear and convincing evidence that, but for constitutional error at trial," he would not have been convicted, R.C. 2953.23(A)(1).  A petitioner like Johnson must satisfy both of those requirements before the trial court may entertain his petition; Johnson satisfied neither.

### C.  The burden is on Johnson to establish that he was unavoidably prevented from discovering Keith's recantation before the deadline

{¶ 13} R.C. 2953.23 puts the onus on the petitioner to show that he was unavoidably prevented from discovering the facts on which his petition relies. R.C. 2953.23(A)(1)(a).  But Johnson maintains that our recent decision in *Bethel* shifted to the state the burden to demonstrate that the petitioner was capable of

---

2. A petitioner need not show that he was unavoidably prevented from discovering the facts on which the petition is based if he establishes that "subsequent to the [statutory deadline] or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right."  R.C. 2953.23(A)(1)(a).  That exception does not apply here.

discovering the evidence sooner. Not so. Construing *Bethel* in that fashion not only misreads that case's holding but also turns R.C. 2953.23 on its head.

{¶ 14} In *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 2, the petitioner's claims relied largely on the state's failure to disclose a report prior to trial. The petitioner alleged that under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state violated his due-process rights by withholding evidence favorable to his defense. *Bethel* at ¶ 2, 11. We considered the propriety of the *Brady* claim on two separate fronts: (1) whether res judicata barred the claim, *Bethel* at ¶ 16-18, and (2) whether the petitioner was unavoidably prevented from timely discovering the basis for his petition as required by R.C. 2953.23, *Bethel* at ¶ 21-25.

{¶ 15} With respect to the res judicata question, we held that the state bore the burden of proving that the petitioner could have raised the *Brady* claim in a previous postconviction petition, because res judicata was invoked by the state. *Bethel* at ¶ 17-18. After dispensing with the state's res judicata argument, this court considered the effect of the *Brady* claim under R.C. 2953.23's "unavoidably prevented from discovery of the facts" requirement. *Bethel* at ¶ 21-25.

{¶ 16} Prior to *Bethel*, Ohio courts typically required a postconviction petitioner to "show that he was unaware of the evidence he [was] relying on and that he could not have discovered the evidence by exercising reasonable diligence." *Id.* at ¶ 21. But we determined in *Bethel* that requiring the demonstration of reasonably diligent attempts to discover *Brady* materials would violate the United States Supreme Court's pronouncement that "criminal defendants have no duty to 'scavenge for hints of undisclosed *Brady* material.' " *Bethel* at ¶ 24, quoting *Banks v. Dretke*, 540 U.S. 668, 695, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). Thus, we held that "when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by

establishing that the prosecution suppressed the evidence on which the defendant relies." *Id.* at ¶ 25. *Accord State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, 201 N.E.3d 861, ¶ 17 ("a defendant may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) by establishing that the prosecution suppressed the evidence on which the defendant would rely").[3]

**{¶ 17}** Properly understood, *Bethel* reconciles the burden of proof in R.C. 2953.23(A)(1) with the dictates of *Brady*. What *Bethel* does not do is eliminate a petitioner's burden of proof. Nor could this court have done so. The General Assembly chose to place the burden of proof squarely on the shoulders of postconviction petitioners such as Johnson by enacting the requirement that "the petitioner show[] that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely," R.C. 2953.23(A)(1)(a).

**{¶ 18}** Holding as Johnson would have us do—that the petitioner does not bear that burden—would transmogrify the statute. Thus, we reaffirm today that a petitioner who files an untimely or successive petition for postconviction relief under R.C. 2953.21 bears the burden of showing that he was unavoidably prevented from discovering the evidence on which the petition relies. A petitioner may make the required showing either by establishing a violation under *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, or by demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence.

*1. Johnson did not meet his burden*

**{¶ 19}** Although Johnson contends that Keith's trial testimony identifying him as the assailant was the result of police pressure, he did not raise a *Brady*

---

3. Crim.R. 33(B), which governs untimely motions for a new trial, likewise requires the defendant to prove that he was "unavoidably prevented" from discovering the evidence on which he relies. " 'The "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1).' " *Bethel* at ¶ 59, quoting *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28.

claim in his petition for postconviction relief. So to carry his burden under R.C. 2953.23(A)(1), he was instead required to submit evidence showing that he was unavoidably prevented from discovering that Keith had doubts about his identification of him. The next question, then, is whether a recanting witness's affidavit dated after the postconviction-petition deadline has passed is sufficient to satisfy that standard.

{¶ 20} The parties propose very different answers to this question. Johnson contends that the bare fact that Keith's recantation affidavit was executed in 2020—long after Johnson's postconviction-petition deadline expired—suffices. Details such as the reasons for and the timing of the affidavit could, according to Johnson, be explored during a hearing on the petition.

{¶ 21} Johnson's preferred approach is consonant with a line of Ohio appellate-court cases holding that an affidavit recanting testimony is, by itself, sufficient to establish that the petitioner was unavoidably prevented from timely submitting the evidence when the affidavit was obtained after the deadline. *See, e.g.*, *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468, ¶ 21 (requiring a hearing on a motion for a new trial "whenever an appellant produces a recanting affidavit after [the deadline for filing the motion]"); *State v. Wright*, 67 Ohio App.3d 827, 831, 588 N.E.2d 930 (2d Dist.1990) (holding, in the context of a motion for a new trial, that the defendant was unavoidably prevented from discovering the evidence relied on, based on recanting witness's statement that the defendant "was neither aware of the contents of the affidavit nor aware of the fact that [the witness] would be willing to give such an affidavit, until * * * the date of the * * * affidavit").

{¶ 22} Other Ohio courts look beyond the date of the affidavit, however. In those cases, the courts held that an affidavit's being dated beyond the deadline is not prima facie evidence that the petitioner was unavoidably prevented from timely discovering the recantation. *See, e.g.*, *State v. Bennett*, 4th Dist. Scioto No.

16CA3765, 2017-Ohio-574, ¶ 15 (determining, in the context of a motion for a new trial, that "[t]he date upon which [the defendant] became aware of [the recanting witness's] statement is not prima facie evidence that [the defendant] was unavoidably prevented from discovering [the] statement during [the period for filing a motion for a new trial]"); *State v. Thornton*, 5th Dist. Muskingum No. CT2016-0041, 2017-Ohio-637, ¶ 54 (holding, in the context of a motion for a new trial, that untimely affidavits "that fail to offer a sufficient explanation as to why evidence could not have been obtained sooner are inadequate to show that the movant was unavoidably prevented from obtaining the evidence within the prescribed time"). It is this latter rule that the state urges us to adopt.

{¶ 23} Which approach is correct? The answer lies in the words of R.C. 2953.23. "When the meaning of a statute is clear and definite, it must be applied as written," *State v. Bertram*, __ Ohio St.3d __, 2023-Ohio-1456, __ N.E.3d __, ¶ 11, because " 'an unambiguous statute means what it says,' " *State v. Waddell*, 71 Ohio St.3d 630, 631, 646 N.E.2d 821 (1995), quoting *Hakim v. Kosydar*, 49 Ohio St.2d 161, 164, 359 N.E.2d 1371 (1977). Words may not be added or deleted according to judicial whimsy. *Waddell* at 631.

{¶ 24} Here, R.C. 2953.23(A)(1)(a) requires a petitioner to show that he was "*unavoidably* prevented"—not merely "prevented"—from discovering the facts on which he would rely. (Emphasis added.) "Unavoidable" means "not avoidable" or "inevitable." *Merriam-Webster's Collegiate Dictionary* 1360 (11th Ed.2003). And something is "inevitable" if it is "incapable of being avoided or evaded." *Id.* at 638. Keeping in mind that R.C. 2953.23 means what it says, a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was "incapable of being avoided or evaded," *Merriam-Webster's Collegiate Dictionary* at 638.

{¶ 25} The light that an affidavit's date sheds on that issue is dim, at best. A date merely reveals when the affidavit was executed or provided, not when the

10

testimony it contains became available. Without an explanation of how the recantation was discovered, the information essential to the R.C. 2953.23 inquiry remains cloaked in darkness. It is this type of information that bears on the petitioner's ability to avoid delay in discovering recanted testimony.

{¶ 26} Johnson argues that questions concerning efforts to discover a recantation and the timing of a supporting affidavit should be explored at a hearing. But R.C. 2953.23 dictates otherwise. Remember, the petitioner bears the burden of proving that he was unavoidably prevented from discovering the evidence on which he must rely, before the trial court even has subject-matter jurisdiction to consider the petition. *See* R.C. 2953.23(A)(1); *Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, at ¶ 24, 36, 38. Therefore, it is the petitioner's duty to present sufficient evidence to carry that burden at the time he files the petition. And there is no practical reason why a hearing might be necessary for the petitioner to satisfy this burden. If testimony can be elicited at a hearing, it can be attested to in an affidavit. We therefore reject Johnson's argument that regardless of the circumstances, a hearing is required whenever a petitioner produces an affidavit from a witness recanting the witness's testimony.

{¶ 27} Accepting an affidavit's date as prima facie evidence satisfying the strictures of R.C. 2953.23(A)(1)(a) would effectively eliminate the word "unavoidably" from the statute. Thus, we hold that R.C. 2953.23(A)(1)(a) requires a petitioner to submit evidence of specific facts beyond the supporting affidavit's date to explain why the petitioner was unable to timely obtain an affidavit from the recanting witness.

{¶ 28} Turning to the facts of this case, we conclude that Johnson did not carry his burden under R.C. 2953.23. The only evidentiary support for Johnson's petition was Keith's affidavit. Missing from Keith's affidavit is any information about when and how he first notified Johnson of his misgivings about his

identification of Johnson. The affidavit sheds no light on whether Keith contacted Johnson or vice versa or when such contact occurred.

**{¶ 29}** In his petition, Johnson stated in conclusory fashion that the information in Keith's affidavit "was not available to [him] until this time" and "was not discoverable by him until Keith voluntarily presented it." But Keith's affidavit does not state, or even imply, this. On the contrary, Keith claims in his affidavit that he had "spent the past seven years thinking about [his] testimony" and that he had daily "felt an incredible weight on [his] shoulders" because he believed he did not identify the right person. In fact, Keith's affidavit provides no information about whether Johnson had been prevented, unavoidably or otherwise, from timely discovering Keith's uncertainties about his identification of Johnson.

**{¶ 30}** Because Johnson has not shown that he was unavoidably prevented from discovering Keith's recantation within the statutory deadline, the trial court lacked jurisdiction to consider his petition.[4]

### 2. *Johnson has not shown constitutional error*

**{¶ 31}** Johnson's petition fails for a second reason. In addition to satisfying R.C. 2953.23(A)(1)(a), Johnson needed to show by clear and convincing evidence that "constitutional error at trial" was the "but for" cause of his convictions, R.C. 2953.23(A)(1)(b). He did not.

**{¶ 32}** Here, Johnson claims that he satisfied this requirement by showing three types of constitutional violations: perjured testimony, police coercion, and a violation under *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Only one of

---

4. It is questionable whether Johnson would be entitled to move forward with his petition even if it were timely and not successive such that R.C. 2953.23's jurisdictional bar were not an issue. He petitioned under R.C. 2953.21(A)(1)(a)(i), which allows "[a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to file a petition. As we discuss below, Johnson did not sufficiently claim in his petition that the state had denied or infringed on any of his constitutional rights.

these theories—perjury—was arguably raised in the trial court: Johnson argued in his petition that he was denied his rights to due process and a fair trial because Keith allegedly committed perjury. Coercion was not mentioned in Johnson's petition.[5] Neither was *Brady*. So Johnson has forfeited those arguments. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21 ("forfeiture is the failure to timely assert a right or object to an error").[6]

{¶ 33} Once Johnson's two forfeited arguments—police coercion and *Brady* violation—are disregarded, we are left with Keith's purported perjury as the sole alleged constitutional error. But perjury is not constitutional error. Both this court and the United States Court of Appeals for the Sixth Circuit have determined that the state's " '*knowing* use of false or perjured testimony' " may constitute a denial of due process. (Emphasis added.) *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001) (lead opinion), quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). The United States Supreme Court has come to the same conclusion. *See United States v. Bagley*, 473 U.S. 667, 678-679, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Unwitting use of perjured testimony is a different story.

{¶ 34} Neither this court nor the United States Supreme Court has held that perjured testimony offered without the state's knowledge is a deprivation of due

---

5. Johnson suggested in his petition that the police pressured Keith. But pressure is not inherently coercive. *See State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 71-76 (threatening to arrest a family member not coercive if such an arrest could be lawfully made); *Morgan v. Bennett*, 204 F.3d 360, 371 (2d Cir.2000) ("pressure merely to testify does not indicate pressure to falsify"). Not only did Johnson fail to assert that Keith had been coerced, he also failed to allege any facts implying coercion.

6. The dissenting opinion takes the position that these arguments were not forfeited. The case it cites in support of that position—*State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773—is inapposite. In that case, the question was whether Bunch had "provided sufficient operative facts to warrant an evidentiary hearing regarding his claim that he was prejudiced as a result of counsel's deficient performance," *id.* at ¶ 50, not whether he had forfeited the claim. Bunch had clearly raised in his postconviction petition the issue of his counsel's ineffectiveness. *See id.* at ¶ 14.

process. The late Justice Scalia once observed that "the Ninth Circuit * * * stretched the Constitution" when it held that "the use of * * * false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. We have never held that, and are unlikely ever to do so." (Citation omitted.) *Cash v. Maxwell*, 565 U.S. 1138, 1145, 132 S.Ct. 611, 181 L.Ed.2d 785 (2012) (Scalia, J., dissenting from the denial of certiorari). Likewise, we decline to do so today.

### III. CONCLUSION

{¶ 35} The trial court could have no jurisdiction to entertain Johnson's untimely, successive petition for postconviction relief unless Johnson established two things: (1) that he was unavoidably prevented from timely discovering that Keith had doubts about his trial testimony and (2) that he would not have been convicted but for constitutional error at trial. *See* R.C. 2953.23(A)(1). He established neither. Nothing in the record details Johnson's efforts, if there were any, to timely obtain an affidavit from Keith, and he has provided no explanation why such efforts would have been unavailing. And a conviction based on false testimony is not a constitutional violation unless the state had knowledge of the testimony's falsity. We therefore affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

KENNEDY, C.J., and FISCHER and DEWINE, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by STEWART and BRUNNER, JJ.

———————————

**DONNELLY, J., dissenting.**

{¶ 36} Because appellant, Eric Johnson, articulated sufficient operative facts to warrant a hearing on his November 2020 petition for postconviction relief, I dissent.

## I. BACKGROUND

{¶ 37} In February 2013, a jury determined that Johnson was the person who robbed and repeatedly shot James Keith on August 26, 2012. According to the Eighth District Court of Appeals' description of the evidence submitted at Johnson's trial,[7] the identification of Johnson as the attacker hinged on Keith's eyewitness-identification testimony; no physical evidence linked Johnson to the attack, and the remaining witnesses at trial were first responders and the police detectives who became involved during the aftermath of the attack. *See State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 5-14, 52. Johnson has maintained that he is innocent and that Keith incorrectly identified him as the attacker.

{¶ 38} In December 2013, Johnson filed his first petition for postconviction relief in this case. *See State v. Johnson*, 8th Dist. Cuyahoga No. 101993, 2015-Ohio-1649, ¶ 4. According to the Eighth District, Johnson asserted in that petition that his trial counsel had been ineffective for failing to investigate an alibi witness and for failing to adequately communicate a midtrial plea offer to Johnson. *Id*. Johnson supported that petition with an affidavit from his trial counsel. *Id.* In January 2014, the trial court denied the petition without a hearing. *Id.* at ¶ 1, 6. In February 2014, Johnson filed a supplemental petition. *Id.* at ¶ 6. According to Johnson's recitation of the facts in his merit brief here, the supplemental petition included an affidavit from Johnson's codefendant, John Alexander, that supported Johnson's claim of innocence. The trial court dismissed the supplemental petition. *Id.* The Eighth District affirmed. *Id.* at ¶ 26.

---

7. For reasons that are unclear, the full record of Johnson's trial-court proceedings was not transmitted on appeal. The portion of the trial-court record that was transmitted includes trial-court docket Nos. 69 through 82, covering docket items from January 22, 2018, through March 8, 2021, but it does not include any materials concerning Johnson's trial or his first petition for postconviction relief. Accordingly, and unfortunately, my understanding of the case is constrained to the representations of the parties and the court of appeals.

**{¶ 39}** The postconviction petition at issue here was filed in November 2020 and included an August 2020 affidavit from Keith, in which he stated:

2. I am the victim in CR567736 State of Ohio v. Eric Johnson.

3. As a result of this incident I was shot nine times, spent seven months in the hospital, was in a coma for a month, and then had to learn to walk again.

4. My only recollection of my assailant is that he was an African American man with gold teeth. I don't have much of a memory of the night of the incident after being placed in the ambulance.

5. I testified at trial that Eric Johnson was the person who robbed and assaulted me.

6. However, I felt pressured by [an investigating detective] to testify against Mr. Johnson even though I wasn't sure he was the person who committed these crimes against me.

7. I have spent the past seven years thinking about this case and my testimony. On a daily basis I have felt an incredible weight on my shoulders because I believe I have identified the wrong person as having committed the crimes against me.

Johnson also asserted in the 2020 petition that the foregoing recantation evidence was unavailable to him before Keith recently came forward and offered the recantation. The trial court summarily denied the petition without a hearing.

## II. ANALYSIS

**{¶ 40}** The November 2020 petition for postconviction relief was untimely and successive under the applicable versions of R.C. 2953.21 and 2953.23. To ultimately prevail on his petition, Johnson would need to provide clear and convincing evidence that a constitutional error occurred at his 2013 trial and that

16

but for that error, no reasonable fact-finder would have found him guilty. *See* R.C. 2953.23(A)(1)(b). Johnson would also need to establish that he was "unavoidably prevented," R.C. 2953.23(A)(1)(a), from discovering the evidence supporting his claim prior to December 2, 2013, which was 180 days after the transcript of his trial was filed in the court of appeals in his direct appeal of his convictions. *See id.*; former R.C. 2953.21(A)(2), 2010 Sub.S.B. No. 77. But we are not concerned at this point with whether Johnson will ultimately prevail on his petition; we are concerned only with whether the trial court should have held a hearing on the petition. To merit a hearing, Johnson simply needed to produce evidence establishing a prima facie claim that he was unavoidably prevented from timely discovering the evidence supporting his petition and that the new evidence presents a cognizable claim of constitutional error. *See State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 20; *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 37. Viewing Johnson's petition and supporting evidence under the facts and circumstances of this case, I believe a hearing on the petition is merited.

### A. "Unavoidably Prevented"

{¶ 41} The majority finds that Johnson provided no proof that he was unavoidably prevented from discovering Keith's recantation before the statutory postconviction-petition deadline apart from the fact that Keith's recantation affidavit is dated after the deadline. The majority concludes that the date of a recantation affidavit is not, by itself, prima facie evidence satisfying the "unavoidably prevented from discovery of the facts" requirement under R.C. 2953.23(A)(1)(a). I might agree with the majority's conclusion under other circumstances, such as those in *State v. Bennett*, 4th Dist. Scioto No. 16CA3765, 2017-Ohio-574, one of the cases relied on by the majority. But I cannot agree with the majority's findings or conclusions under the circumstances of this case.

**{¶ 42}** In *Bennett*, which involved an untimely motion for a new trial, the recanting witness was the defendant's brother, *id.* at ¶ 4. More than ten years before the new-trial matter was filed, the defendant's brother testified at the defendant's trial that the defendant had made an admission implying that he had caused the victim's death, contradicting the defendant's testimony that the death had been accidental, *State v. Bennett*, 4th Dist. Scioto No. 05CA2997, 2006-Ohio-2757, ¶ 7-8. The defendant and his brother had been in phone contact while the defendant was in jail. *Bennett*, 2017-Ohio-574, at ¶ 6. Given that specific context, the defendant understandably could not establish a prima facie case under Crim.R. 33(B) (and likewise could not have established a prima facie case under R.C. 2953.23(A)(1)(a)) by baldly claiming that he had been unavoidably prevented from discovering his brother's recantation.

**{¶ 43}** By contrast, the recanting witness in this case is the victim himself—Keith. The parties state in their briefs that Keith testified at Johnson's trial that he had seen Johnson around town before the attack and had known him only as "E." Thus, it appears that Johnson and Keith had not been well acquainted. Under the circumstances of this case, which include a victim who had suffered a brutally violent attack, the victim's recantation of identification testimony that had otherwise ensured Johnson's imprisonment for the attack, and the fact that Johnson and the victim had been essentially strangers to each other, no more evidence is necessary to establish a prima facie claim that Johnson was unavoidably prevented from discovering Keith's recantation sooner.

**{¶ 44}** The majority holds that more evidence was necessary to sustain Johnson's claim that he was unavoidably prevented from discovering Keith's recantation sooner, but it articulates no standard in that regard. What more must be shown? Must the defendant spell out in an affidavit that he had not been in close contact with the recanting victim and that he adhered to the truth that it is a terrible idea to go around harassing the victim after trial? What more do we need besides

Johnson's claim that Keith only "recently" decided to "come forward recanting his identification" testimony and Keith's statement that he came forward to recant after spending years thinking about the case and feeling "an incredible weight on [his] shoulders" about his testimony? If a person is convicted of a crime based on eyewitness-identification testimony and that person is actually innocent, the person already knows that one of two things happened: (1) either the witness lied or (2) the witness was mistaken. When the crucible of cross-examination and the penalties for perjury were not enough to convince a witness to testify truthfully and accurately at trial, it is unreasonable to expect the defendant to extract a different result from the witness after trial.

{¶ 45} Because the circumstances of Keith's recantation relevant to R.C. 2953.23(A)(1)(a) were already obvious, an affidavit articulating such obvious facts and circumstances would be superfluous, and requiring more of defendants like Johnson could be dangerous. Doing so could be dangerous to the victim's safety and peace of mind. It could be dangerous to the defendant, who could face accusations of retaliation or intimidation of a witness. And it could be dangerous to the defendant's claim of innocence, given that a badgered recanting witness would be seen as far less credible than a witness who recanted on his or her own accord.

{¶ 46} Accordingly, I would hold that Johnson's November 2020 petition established a prima facie claim that he was unavoidably prevented from timely discovering Keith's recantation sooner and that the trial court erred by not holding a hearing on the petition.

## B. "Constitutional Error"

{¶ 47} Johnson argues that he adequately raised a cognizable claim of constitutional error through Keith's affidavit, which he says establishes that Keith committed perjury at his trial and that the perjured testimony was a result of police coercion and pressure to misidentify Johnson as the attacker, and he argues that the

SUPREME COURT OF OHIO

state's failure to disclose that coercion violated the Supreme Court of the United States's holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The majority rejects Johnson's arguments primarily by finding that Johnson failed to raise any argument regarding police coercion or *Brady* in his petition in the trial court. While I recognize that the legal arguments in Johnson's petition left a lot to be desired, I disagree that Johnson's claims were entirely forfeited.

{¶ 48} As long as Johnson's petition alleged sufficient operative facts that, if true, establish that a constitutional violation at his trial caused his convictions, he is entitled to a hearing on the petition. *See State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, ¶ 45-50. I believe that sufficient operative facts were presented through Keith's averment that "[he] testified at trial that Eric Johnson was the person who robbed and assaulted [him]. * * * However, [he] felt pressured by [an investigating detective] to testify against Mr. Johnson even though [he] wasn't sure [Johnson] was the person who committed these crimes against [him]."

{¶ 49} Keith did not merely say that he was pressured to testify in general. He said that he was pressured to testify that Johnson was the person who had attacked him, "even though" he had been unsure about the identity of his attacker. The most reasonable reading of this averment is that the detective knew that Keith was unsure of his attacker's identity but pressured Keith to provide identification testimony anyway. Regardless of whether or not Keith meant to indicate that the state had instructed him to commit perjury, he indicated at the very least that he had expressed uncertainty to the police about the identity of his attacker. Evidence of such expressions to the police would have been favorable and material to Johnson's defense, given that Johnson's convictions hinged on Keith's identification testimony, and the state's failure to disclose such favorable, material evidence to Johnson would certainly violate *Brady*. Regardless of whether Johnson's counsel

specifically mentioned *Brady* in Johnson's petition, the petition presented sufficient operative facts to merit a hearing.

### III. CONCLUSION

{¶ 50} I have emphasized that "[w]hen postconviction petitioners seeking new trials provide evidence outside the trial-court record that potentially undermines the theory of guilt that was used to convict them, courts should hold hearings on the petitions as a regular practice." *Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, at ¶ 43 (Donnelly, J., concurring); *see also Bunch* at ¶ 51; *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 72 (Donnelly, J., dissenting); *State v. Miller*, __ Ohio St.3d __, 2023-Ohio-3448, __ N.E.3d __, ¶ 62 (Donnelly, J., dissenting).

{¶ 51} Johnson's November 2020 petition for postconviction relief articulates operative facts showing that the eyewitness-identification evidence that was crucial to the determination of Johnson's guilt at trial may have been false. I personally think that this conclusion alone merits closer review of Johnson's petition, given that mistaken eyewitness identifications are thought to be " 'responsible for more wrongful convictions than all other causes combined,' " *United States v. Brownlee*, 454 F.3d 131, 142 (3d Cir.2006), quoting A. Daniel Yarmey, *Expert Testimony: Does Eyewitness Memory Research Have Probative Value for the Courts?*, 42 Canadian Psychol. 92, 93 (May 2001). But regardless, Johnson's petition also provided evidence establishing a prima facie claim that he was unavoidably prevented from discovering Keith's recantation prior to R.C. 2953.21's deadline, and the facts established in the recantation affidavit present a cognizable claim that Johnson's convictions were predicated on the state's violations of his constitutional rights.

{¶ 52} I would reverse the judgment of the Eighth District Court of Appeals and remand the cause to the trial court with an order for it to proceed to an

evidentiary hearing on Johnson's November 2020 petition for postconviction relief. Accordingly, I dissent.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

—————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki and Tasha L. Forchione, Assistant Prosecuting Attorneys, for appellee.

Joseph V. Pagano, for appellant.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Samuel C. Peterson and Jana M. Bosch, Deputy Solicitors General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Cullen Sweeney, Cuyahoga County Public Defender, and John T. Martin and Erika B. Cunliffe, Assistant Public Defenders, urging reversal for amicus curiae Cuyahoga County Public Defender.

—————————