[Cite as *State v. Everson*, 2025-Ohio-2628.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

REGINALD EVERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0097

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2008 CR 00429

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dave Yost*, Ohio Attorney General*,* and *Atty. Drew Wood*, Special Prosecuting Attorney and Assistant Attorney General, for Plaintiff-Appellee and

*Atty. Joseph C. Patituce*, Patituce & Associates, LLC, for Defendant-Appellant.

Dated: July 25, 2025

**DICKEY, J.**

{¶1}   Appellant, Reginald Everson, appeals the dismissal of his second petition for postconviction relief for lack of jurisdiction by the Mahoning County Court of Common Pleas.  In his sole assignment of error, Appellant argues the trial court erred in concluding he failed to show he was unavoidably prevented from the timely discovery of the content of the affidavit of a state's witness, Mickele Glenn ("Glenn"), in which Glenn recants his identification of Appellant as the perpetrator at trial. Appellant further argues the affidavit establishes substantial grounds for relief.  The trial court found Appellant provided a "plausible" explanation for his inability to timely discover the substance of the Glenn affidavit, but Appellant failed to demonstrate by clear and convincing evidence that no reasonable factfinder would have rendered a guilty verdict but for Glenn's testimony at trial.

{¶2}   We note Appellant filed a motion for leave to file a motion for a new trial pursuant to Crim. R. 33 a few days prior to filing the motion for leave to file a postconviction petition before this Court on appeal.  Both motions for leave require Appellant to demonstrate he was unavoidably prevented from discovering the substance of the Glenn affidavit, albeit with distinct prescribed time limits – 120 days after the verdict was rendered for the motion for leave to file a motion for a new trial, and 365 days after the filing of the trial transcript in the direct appeal for the successive petition.

{¶3}   On January 30, 2025, the trial court expressed its intent to set the motion for leave to file motion for a new trial for a hearing after the special prosecutor files an appearance.  A notice of appointment of special prosecutor was filed on February 19, 2025.  Consequently, the motion for leave to file a motion for a new trial is still pending in trial court.

{¶4}   The state argues the pending Civil Rule 33 motion somehow supplants Appellant's second postconviction petition.  To the contrary, the legislature created two non-exclusive postconviction remedies, and we do not find the pending motion for leave to file motion for a new trial in and of itself supports the dismissal of Appellant's second petition. The state's argument that the Rule 33 motion is the proper vehicle for Appellant's constitutional challenge presupposes the state's lack of awareness of the perjured

testimony of a state's witness. However, the state's awareness of Glenn's alleged perjury is among the issues raised in this appeal.

{¶5} Turning to the above-captioned appeal, we find Appellant has failed to show he was unavoidably prevented from discovering the contents of the Glenn affidavit within one year of his conviction, and Appellant has failed to show by clear and convincing evidence that a constitutional violation occurred in this case. Accordingly, the judgment entry of the trial court dismissing the petition is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶6} We set out the following factual basis for Appellant's conviction in his direct appeal:

On March 30, 2008, Terrell Roland ("Terrell") was shot and killed outside his mother's home at 117 East Avondale in Youngstown, Mahoning County, Ohio. He was 18 years old. Terrell was sitting on the driveway next to his friend [Glenn] when someone in a black vehicle drove by and shot him. Glenn ran inside the house and told the victim's mother, Carol Roland ("Carol"), about the shooting and she ran outside. Terrell told his mother that "Reg shot me," and he asked her to call 911. Terrell then lost consciousness and was unresponsive when police arrived. He died later that evening at the hospital.

Youngstown Police Officers Kelly Lamb and Robert DiMaiolo were two of the officers who responded to the shooting. Officer Lamb determined that Glenn had witnessed the shooting and she placed him in Officer DiMaiolo's cruiser. Glenn initially stated that he had not seen the crime, but admitted he was a witness after being placed in the police cruiser. He identified the shooter as a man he knew named "Reg," and he gave a description of the car used in the shooting: a black, four-door Buick Regal. He did not know Reg's last name. Glenn told Officer DiMaiolo that Reg lived at 114 West Chalmers Avenue in Youngstown. Officer DiMaiolo took Glenn to the police station for further questioning and asked Officer Michael Quinn

to investigate the 114 West Chalmers Avenue address. Officer Quinn went to the location and spoke with Marion Everson, Appellant's uncle, who stated that Appellant lived with him and had access to a black Buick Regal.

It was later determined that Glenn and the victim were friends, and they both knew Appellant. On the afternoon of the shooting, Glenn was at 117 East Avondale to get his hair cut. He was wearing a bullet proof vest and was carrying a firearm because of a feud he was having with one of Appellant's cousins. He was standing outside the house in the driveway and Terrell was sitting next to him when a black Buick Regal drove up to the house and stopped. Shots were fired from the vehicle and hit Terrell. Glenn recognized the shooter as Reg and saw that there was no one else in the vehicle. He later picked Appellant out of a photo array as the person who shot Terrell.

*State v. Everson*, 2016-Ohio-87, ¶ 2-4 (7th Dist.).

{¶7} Several additional facts inform our decision on the motion for leave to file the successive petition. The state argued at trial that the victim was the unintended recipient of a bullet meant for Glenn. The defense countered that Glenn, who conceded he had no experience with firearms, drew his weapon when he saw Appellant's automobile reduce its speed then stop in front of the house and accidently shot the victim. Glenn was the only witness present during the fatal shooting.

{¶8} Glenn testified he was prepared for trouble but never expected a confrontation with Appellant's cousin at the residence of an uninvolved third party. Nonetheless, Glenn recognized the vehicle as belonging to Appellant when it was traveling down the street, then he recognized the driver to be Appellant when the vehicle stopped in front of the house. Glenn testified he and the victim were standing roughly twelve feet from the vehicle when two shots were fired from inside the vehicle through the open passenger side window. At trial, Glenn denied drawing his handgun when gunshots were fired.

{¶9}   One of the officers at the scene asked Glenn if he witnessed the shooting and Glenn replied, "I wasn't there."  (6/25/12 Trial Tr., p. 354.)  Glenn explained at trial that he was "scared [and] shocked." (*Id.* at p. 353.)  Nonetheless, officers placed Glenn in the back of a patrol car, where he sat unsupervised until he was transported to the police station.  Glenn concealed his Bryco Jennings .380 and fourteen rounds of ammunition under the back seat of the patrol car.

{¶10}  While transporting Glenn to the station, Officer DiMaiolo asked Glenn to recount the evening's events.  Glenn told Officer DiMaiolo that "Reg" shot the victim, and although Glenn did not know "Reg's" last name, he did know where "Reg" resided.  Before taking Glenn to the station, Officer DiMaiolo drove to the address for "Reg" provided by Glenn and briefly questioned one of the residents.  Officer DiMaiolo confirmed Glenn's identification of Appellant as the assailant while being transported to the station.

{¶11}  At the police station, Glenn repeated his identification of "Reg" as the assailant to the detectives assigned to the case, then identified Appellant's photograph from a photo array.  Glenn also disclosed he had concealed a firearm under the back seat of the patrol car.  Glenn was arrested for carrying a concealed weapon, a felony of the fourth degree, but the charge was ultimately dismissed.

{¶12}  Subsequent to the fatal shooting at issue in this appeal, Glenn plead guilty to having a weapon under disability, a felony of the third degree, and was sentenced on February 4, 2010 to a three-year term of confinement.  The weapon under disability conviction is unrelated to the events giving rise to Appellant's aggravated murder conviction.

{¶13}  Glenn filed a motion for judicial release on August 30, 2010.  In consideration for Glenn's testimony in the above-captioned case (he testified at the trial in June of 2012), the state did not object to his early release in June of 2011.

{¶14}  Glenn conceded on cross-examination he told the detectives he did not know the color of the assailant's shirt and claimed the assailant "probably had black hair." (*Id.* at p. 371.)  Glenn denied having told friends that the state had bartered his false testimony identifying Appellant in exchange for dismissal of the original firearms charge.

{¶15}  Glenn admitted he had no experience with handguns, but had armed himself due to the threat from Appellant's cousin. Glenn conceded on cross-examination

that he told detectives, "something told [Glenn] to pull [the firearm] out [when the vehicle drove up the street]," but he denied drawing the weapon at trial. (*Id.* at p. 379.) Glenn further conceded he told detectives, "I started to shoot back. I didn't have a gun – well I had a gun, but I didn't shoot." He continued, "I didn't shoot back at the time. I seen my buddy hit the ground and I didn't shoot." (*Id.* at p. 383.)

**{¶16}** On redirect, Glenn testified the detectives specifically asked, "so you saw [Appellant's] face, and Glenn responded, "Yes." (*Id.* at p. 391.) The following colloquy occurred on re-direct examination:

> Q:     Ok. On page three [of the transcript of the interview with detectives], do you see that at Line 19 they ask you, "All right. And you told the officers you recognized this guy?" And your answer was?
>
> A:     Yes.
>
> Q:     Okay. They ask you, "All right. And who is he?" What was your answer?
>
> A:     I said his name was Reg.
>
> . . .
>
> Q:     And on page 4, they asked you, "And who is he?" Line 2, you identified?
>
> A:     [Appellant.]
>
> Q:     Okay. And later down that page, they ask whether or not you saw his face, and on Line 21, you say?
>
> A:     Yes. I seen his face when he rolled up.
>
> Q:     Okay. So you identify him again there on Page [6].
>
> . . .

> They're asking you again about what you saw. What do you say?
>
> A:     I seen his face.
>
> . . .
>
> Q:     Ok.  And back on Page 17 again. They verify again whether or not you saw his face. On Lines 7 and 8, they ask you, "So you saw [Appellant's] face; right" And your answer?
>
> A:     Yes.
>
> Q:     And I'm not going to belabor this point, but multiple times you say, "Yes, I saw his face. I saw his face."
>
> A:     Yes.

(*Id.* at p. 392-394.)

{¶17}  On further redirect, Glenn testified the Bryco Jennings .380 was fully loaded, and all the bullets were in the magazine, with no bullet in the chamber. During closing argument, defense counsel argued Glenn had sufficient time to collect and dispose of the shell casings prior to the arrival of law enforcement at the crime scene, and more than sufficient time to reload the weapon while he sat unsupervised in the back seat of the patrol car.

{¶18}  Despite Glenn's concession during his interview with detectives that he was armed when the victim was shot, no gunshot residue test was performed on Glenn. Further, the Bryco Jennings .380 was not examined in order to determine whether it had been recently discharged.

{¶19}  The sole witness for the defense was Michael E. Roberts, a ballistics expert from the Bureau of Criminal Identification and Investigation, who testified the spent bullet jacket fragment removed from the victim's body could have been discharged from the Bryco Jennings .380.  Because the fragment was damaged, Roberts relied on class characteristics (as opposed to individual characteristics) to conclude the Bryco Jennings .380 was among 431 potential firearms that could have discharged the fragment.

Case No. 24 MA 0097

{¶20} During the state's case-in-chief, Mahoning County Forensic Pathologist Michael Ohr, M.D., conceded that he was unable to determine the range from which the handgun was fired. However, he testified generally that a handgun fired at close range would leave soot and unburned or partially burned granules of gunpowder on the victim's clothing, and nothing was present around the bullet hole in the victim's jeans. Dr. Ohr conceded on cross-examination that specific testimony regarding the presence of soot and gunpowder on the victim's clothing would depend upon the type of weapon and the distance from which it was fired.

{¶21} We provided the following procedural history of the case in Appellant's first appeal of the denial of his original petition for postconviction relief:

> A Mahoning County Grand Jury indicted Appellant on one count of aggravated murder, a first-degree felony in violation of R.C. 2903.01(A)(F), with an accompanying specification, and having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(b). The matter was bifurcated and proceeded to a jury trial on the aggravated murder charge and accompanying specification. The jury found Appellant guilty. The trial court then held a bench trial on the having a weapon while under disability charge and found Appellant guilty. The court sentenced Appellant to 30 years to life for aggravated murder, five years for the firearm specification, and three years for having a weapon while under disability, to be served consecutively for a total sentence of 38 years to life.
>
> Appellant filed a direct appeal on July 11, 2012. On appeal, this court affirmed Appellant's convictions for aggravated murder and the specification. *Everson*, at ¶ 71. But we reversed his conviction for having a weapon while under a disability finding that Appellant never waived his right to a jury trial on this charge. *Id.*

*State v. Everson*, 2016-Ohio-3419, ¶ 3-4 (7th Dist.).

{¶22} We continued the procedural history of this case in Appellant's second appeal of the denial of his original petition for postconviction relief:

Case No. 24 MA 0097

Appellant, acting pro se, filed a petition for postconviction relief on July 12, 2013, claiming ineffective assistance of trial counsel. He also filed two amended petitions to which he attached the affidavit of alleged witness Carlos Valentin. According to his affidavit, Valentin stated that on the day of the murder, he saw [Glenn] and Roland standing in Roland's driveway. Valentin then went inside his own house. He heard gunshots. He then looked outside and saw Glenn standing over Roland pointing a gun at him. Valentin then saw Glenn run off behind Roland's house. Valentin further averred that he told the prosecutor what he witnessed and that the prosecutor tried to convince him to say that he saw appellant or a black car at the time of the shooting. And he stated that the prosecutor offered him judicial release if he would testify that he saw appellant or a black car in the area at the time of the shooting. Finally, Valentin averred he told the same information to appellant's defense attorney, but the attorney never contacted him to testify.

The trial court denied appellant's petition without considering his amended petitions, finding that appellant's pleadings and affidavit failed to demonstrate that trial counsel was ineffective. Appellant appealed the trial court's ruling.

On appeal, this court reversed and remanded the matter. *State v. Everson*, 7th Dist. No. 14 MA 0072, 2016-Ohio-3419, appeal not allowed, 146 Ohio St.3d 1492, 2016-Ohio-5585, 57 N.E.3d 1171. We found the trial court erred in ruling on appellant's petition without considering the two amended petitions that included Valentin's affidavits. *Id.* at ¶ 35. We instructed the trial court on remand to consider appellant's two amended postconviction petitions and to issue findings of fact and conclusions of law regarding the amended petitions. *Id.*

On remand, plaintiff-appellee, the State of Ohio, filed a motion for summary judgment asserting appellant failed to present competent,

credible evidence that his trial counsel was ineffective. The state attached a transcript of a prior proffer by Valentin that contradicted his affidavit. It also attached the affidavit of prosecuting attorney Martin Desmond. Appellant did not file a response to this motion.

The trial court found that Valentin's affidavit lacked credibility based upon Valentin's earlier proffer and [Prosecutor Desmond's] affidavit. Therefore, the court found appellant failed to support his postconviction petition with competent, credible evidence dehors the record to warrant postconviction relief. Consequently, the court granted the state's motion for summary judgment and dismissed appellant's postconviction petition.

*State v. Everson*, 2017-Ohio-898, ¶ 4-8 (7th Dist.)

**{¶23}** In Appellant's second appeal of the denial of his original petition for postconviction relief, we found the trial court acted within its discretion in finding Valentin's affidavit lacked credibility based on numerous inconsistencies between his affidavit and his proffer to the prosecutor. We further found no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), as Valentin conceded he shared the substance of the affidavit with defense counsel prior to the trial. It is important to note that Valentin refused to testify at trial, so the prosecutor opposed judicial release and Valentin returned to the penitentiary. (7/1/16 Affidavit of Martin Desmond, ¶ 12.)

**{¶24}** On December 2, 2019, Appellant, acting pro se, filed his motion to file a second petition for postconviction relief and on December 6, 2019, he filed a second petition without a ruling on the pending motion for leave. He asserted he was unavoidably prevented from discovering information contained in three affidavits attached to motion for leave to file, the affidavits of Erica Moore, Glenn, and Marlan Everson. Appellant's petition, to the extent it is predicated upon the Glenn, affidavit is before us on appeal.

**{¶25}** According to Appellant's affidavit, Glenn contacted Appellant's cousin to inform him that Glenn wanted to recant his trial testimony. Appellant's cousin relayed the information to another cousin, who requested that Glenn contact Appellant's attorney. Richard Robinson, a third family member, received a copy of the Glenn affidavit on August

Case No. 24 MA 0097

21, 2019 and forwarded a copy to Appellant, which Appellant received on August 28, 2019. No date is provided for Glenn's initial contact with Appellant's cousin and no timeline is provided regarding the various steps leading to the making of the Glenn affidavit.

{¶26} Appellant explained he was unaware of Glenn's desire to recant his testimony because Appellant believed he was prohibited from contacting any of the state's witnesses. Appellant attempted to contact Glenn prior to the trial, but was admonished by defense counsel because Glenn told the trial court that he was being harassed by Appellant. Defense counsel explained to Appellant that he could be charged with intimidation if he contacted a witness for the state. Appellant mistakenly believed the prohibition continued even after the trial was concluded.

{¶27} Glenn testified on behalf of the state and identified Appellant as the perpetrator. However, in his affidavit, Glenn recants his eyewitness identification of Appellant. Glenn concedes he "recognized the Buick Regal as being the motor vehicle which [Appellant] sometimes drove." (Affidavit of Mickele Glenn, ¶ 5.) However, Glenn denies seeing Appellant driving the vehicle or firing the shots. (*Id.* at ¶ 7.)

{¶28} According to Glenn's affidavit, Prosecutor Desmond threatened to charge Glenn with the fatal shooting if Glenn did not testify that he saw Appellant driving the vehicle. (*Id.* at ¶ 9.) Glenn writes, "I testified at [Appellant's] trial that I saw [Appellant] driving the Buick Regal because I feared I would be charged with murder. My testimony that I saw [Appellant] operating the Buick Regal was false and [Prosecutor Desmond] knew my testimony was false." (*Id.*) Glenn's affidavit provides no timeline of events leading to his recantation.

{¶29} No Desmond affidavit was offered by the state with respect to the motion for leave to file the successive petition currently on appeal. Moreover, Prosecutor Desmond's averments in his 2016 affidavit regarding Valentin's proffer contain specific denials of Valentin's allegations, but no general denial of prosecutorial misconduct.

{¶30} The state filed a motion for judgment on the pleadings on March 2, 2020. The state argued Glenn identified Appellant as the perpetrator prior to Prosecutor Desmond's involvement in the case. On March 17, 2020, Appellant filed a motion to strike the motion for judgment on the pleadings and a brief in opposition to the motion.

Case No. 24 MA 0097

**{¶31}** On July 31, 2020, Attorney Joseph Patituce filed a notice of appearance on Appellant's behalf. Roughly three years later, on July 21, 2023, Patituce filed a motion for an evidentiary hearing. On July 19, 2024, the trial court dismissed the petition without a hearing.

**{¶32}** The trial court characterized Appellant's explanation for his failure to timely discover Glenn's desire to recant his trial testimony as "plausible." However, the trial court ultimately found Appellant had failed to establish by clear and convincing evidence, but for Glenn's testimony identifying Appellant as the perpetrator, that no reasonable factfinder would have found Appellant guilty of murder. The trial court predicated its decision on Glenn's statements to the police that Appellant was the perpetrator on the night of the shooting, which was prior to Prosecutor Desmond's involvement in the case. The trial court also cited Glenn's trial testimony that he was armed and wearing a bulletproof vest, based on his belief that he was a target of Appellant's family. Finally, the trial court relied on the victim's statement to his mother that "Reg shot [him]" and the undisputed evidence that the fatal shots were fired from Appellant's vehicle.

**LAW**

**{¶33}** In Ohio, "[a]ny person who has been convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" is permitted to "file a petition in the court that imposed [the] sentence . . . asking the court to vacate or set aside the judgment or sentence." R.C. 2953.21(A)(1)(a).

**{¶34}** Regarding entitlement to a hearing, a petitioner's right is not automatic. *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999); *State v. Jackson*, 64 Ohio St.2d 107, 111 (1980). R.C. 2953.21(D) provides that before granting such a hearing, the court shall determine whether there are "substantive grounds for relief." In making that determination, "the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(F) further states the trial court must hold a prompt hearing

"unless the petition and the files and records of the case show the petitioner is not entitled to relief."

**{¶35}** "Except as otherwise provided in [R.C. 2953.23], a petition . . . shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction . . . ." R.C. 2953.21(A)(2)(a). A trial court does not have subject-matter jurisdiction to adjudicate a postconviction petition that is untimely – i.e., filed outside the statutory deadline under R.C. 2953.21(A)(2) – or successive – i.e., a second or subsequent petition. *See State v. Apanovitch*, 2018-Ohio-4744, ¶ 35-36, 38.

**{¶36}** There are two exceptions to this jurisdictional bar. *See* R.C. 2953.23(A)(1) and (2). One is relevant here. A trial court may entertain an untimely or successive petition if "the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and "[t]he petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." R.C. 2953.23(A)(1)(a) and (b). Unless the petition is timely filed, the trial court is not permitted to consider the substantive merits of the petition. *State v. Croom*, 2016-Ohio-5686, ¶ 24 (7th Dist.), citing *State v. Beaver*, 131 Ohio App.3d 458, 461(11th Dist. 1998) (the trial court should have summarily dismissed appellant's untimely petition without addressing the merits).

**{¶37}** Allegations of procedural misconduct alleging violations of *Brady v. Maryland*, 373 U.S. 83 (1963) in successive postconviction proceedings are governed by two recent Ohio Supreme Court cases, *State v. Bethel*, 2022-Ohio-783 and *State v. Johnson*, 2024-Ohio-134. Neither party to this appeal included the holdings in *Bethel* or *Johnson* in their appellate briefs or in the trial court pleadings. As a consequence, the trial court did not consider either case. We review de novo whether the trial court had subject-matter jurisdiction to entertain a petition for postconviction relief. *Bethel* at ¶ 20, citing *Apanovitch* at ¶ 24.

**{¶38}** In *Brady,* the Supreme Court of the United States recognized the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment. *Id.* at 87, *see also Kyles v. Whitley*, 514 U.S. 419, 432 (1995). That duty "encompasses impeachment evidence as well as

exculpatory evidence," *Strickler v. Greene*, 527 U.S. 263, 280 (1999), and it "encompasses evidence 'known only to police investigators and not to the prosecutor.' " *Id.* at 280-281, quoting *Kyles* at 438. The *Brady* rule applies regardless of whether evidence is suppressed by the State willfully or inadvertently. *Strickler* at 282.

**{¶39}** "Favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles* at 433, quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). A different result is reasonably probable "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Id.* at 434, quoting *Bagley* at 678. A defendant establishes a *Brady* violation "by showing that the favorable [but suppressed] evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles* at 435.

**{¶40}** "It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense." *Bethel*, 2022-Ohio-783, ¶ 25, *see Kyles*, 514 U.S. at 432-433. As a consequence, a defendant seeking to assert a *Brady* claim is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence. *Id.*, *see Strickler*, 527 U.S. at 282-285. In other words, a defendant asserting a *Brady* claim in an untimely or successive petition for postconviction relief satisfies the "unavoidably prevented" requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies.

**{¶41}** However, where the suppressed evidence involves a recanting witness, the defendant must provide an affidavit containing the recantation of the witness's testimony, as well as a demonstration that the "defendant 'was neither aware of the contents of the affidavit nor aware of the fact that [the witness] would be willing to give such an affidavit[.]' " (Citation omitted.) *Johnson,* 2024-Ohio-134, at ¶ 21. The *Johnson* Court held the acceptance of the date of a recanting witness's affidavit as prima facie evidence to satisfy the strictures of R.C. 2953.23(A)(1)(a) would effectively eliminate the word "unavoidably" from the "unavoidably prevented" requirement of the statute. *Id.* at ¶ 27.

**{¶42}** The Ohio Supreme Court held R.C. 2953.23(A)(1)(a) requires a petitioner to submit evidence of specific facts beyond the supporting affidavit's date to explain why the petitioner was unable to timely obtain an affidavit from the recanting witness. *Id.* In other words, "a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was 'incapable of being avoided or evaded.' " *Id.* at ¶ 24, quoting *Merriam-Webster's Collegiate Dictionary* at 638.

**{¶43}** Of equal import, the *Johnson* Court rejected the argument that questions concerning the reasons for a recanting witness affidavit, the timing of a recanting witness affidavit, and efforts to discover a recantation must be explored at a hearing. The Court reasoned:

> [T]he petitioner bears the burden of proving that he was unavoidably prevented from discovering the evidence on which he must rely . . . Therefore, it is the petitioner's duty to present sufficient evidence to carry that burden at the time he files the petition. And there is no practical reason why a hearing might be necessary for the petitioner to satisfy this burden. If testimony can be elicited at a hearing, it can be attested to in an affidavit.

*Johnson* at ¶ 26.

**{¶44}** Finally, Ohio intermediate appellate courts have opined that "evidence of perjury, without proof of knowledge on the part of the prosecution of that perjury does not implicate constitutional rights, [and therefore] does not support a petition for postconviction relief." *State v. Johnson*, 2022-Ohio-81, ¶ 21 (8th Dist.); *State v. Hill*, 2021-Ohio-3899, ¶ 41 (10th Dist.); *State v. Mackey*, 2018-Ohio-516, ¶ 12 (2d Dist.); *State v. Hoop*, 2005-Ohio-1407, ¶ 26 (12th Dist.).

## ANALYSIS

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR POSTCONVICTION RELIEF WHEN APPELLANT ESTABLISHED THAT HE WAS UNAVOIDABLY PREVENTED FROM OBTAINING AN**

**AFFIDAVIT FROM THE MAIN WITNESS RECANTING THAT WITNESS'S TESTIMONY AND STATEMENTS TO THE POLICE WHEN THAT AFFIDAVIT ESTABLISHES SUBSTANTIAL GROUNDS FOR RELIEF.**

**{¶45}** Appellant challenges the trial court's conclusions with respect to both factual findings required for a trial court to exercise jurisdiction over a successive petition. First, Appellant argues he was unavoidably prevented from discovering the substance of the Glenn affidavit within the year following Appellant's conviction. Second, Appellant contends the Glenn affidavit demonstrates by clear and convincing evidence that a reasonable factfinder would not have entered a guilty verdict but for constitutional error at trial, that is, Glenn's eyewitness identification of the Appellant as the perpetrator.

**{¶46}** In *Johnson*, 2024-Ohio-134, the defendant was convicted in 2013. He filed his third postconviction petition in 2020. The only evidence that Johnson submitted in support of his successive petition was an affidavit from the recanting witness, who was also the victim. *Id.* at ¶ 28. In his affidavit, the victim detailed his "doubts" about his trial testimony, his limited recollection of his assailant (he was rendered unconscious by several gunshots), and his concern that he had improperly identified Johnson as his attacker. *Id.* at ¶ 7. The victim also explained he had "felt pressured by [a police detective] to . . . testify against [Johnson] even though [he] wasn't sure [Johnson] was the person who committed these crimes against [him]." *Id.*

**{¶47}** The affidavit contained no information about when or how Johnson learned of the victim's misgivings regarding his identification, who contacted whom, when such contact occurred or any other information "about whether Johnson had been prevented, unavoidably or otherwise, from timely discovering [the victim's] uncertainties about his identification of Johnson." *Id.* at ¶ 28-29. Further, the victim claimed in his affidavit that he had "spent the past seven years thinking about [his] testimony" and that he had daily "felt an incredible weight on [his] shoulders" because he believed he did not identify the right person. *Id.* at ¶ 29. Based on the forgoing facts, the Ohio Supreme Court held Johnson did not carry his burden of showing that he was unavoidably prevented from discovering the recantation within the statutory deadline. *Id.* at ¶ 8-30, 35.

**{¶48}** Appellant's affidavit contains a narrative of the events leading to the making of Glenn's affidavit. However, no dates are provided regarding the timeline beginning

with Glenn's desire to recant and culminating in the making of his affidavit. While the date that Appellant received Glenn's affidavit is clear, it is impossible to determine whether he was "unavoidably prevented" from timely discovering Glenn's desire to recant his testimony.

**{¶49}** The trial court found Appellant's affidavit supplied a "plausible" explanation that Appellant was unavoidably prevented from discovering the information provided in the Glenn affidavit. However, the Ohio Supreme Court in *Johnson* establishes Appellant's burden of proof with respect to the trial court's jurisdiction to consider a second postconviction petition requires more than a plausible explanation. Accordingly, we find Appellant's affidavit fails to establish that he was "unavoidably prevented" from timely discovering Glenn's desire to recant his trial testimony.

**{¶50}** Even assuming Appellant has established he was unavoidably prevented from acquiring the information in the Glenn affidavit within the prescribed time limit, we agree with the trial court that Appellant has failed to establish the second requirement necessary for the trial court to have jurisdiction over a successive petition. The trial court found Appellant had not established by clear and convincing evidence that "but for some constitutional error at trial, no reasonable factfinder would have found him guilty of [the victim's] murder." (7/19/24 J.E., p. 12.) The trial court predicated its decision on Glenn's identification of Appellant as the assailant to Officer DiMaiolo and the detectives before Prosecutor Desmond's involvement in the case. The trial court further cited the victim's identification of "Reg" to his mother, the assailant's access to Appellant's automobile, and the feud between Glenn and Appellant's cousin.

**{¶51}** When reviewing a postconviction petition, a trial court should give due deference to sworn affidavits filed in support of the petition, but in the sound exercise of discretion, the court may judge their credibility in determining whether to accept the affidavits as true statements of fact. *State v. Calhoun*, 86 Ohio St.3d 279, 284-285 (1999). In assessing the credibility of an affidavit, the court should consider: "(1) whether the judge reviewing the postconviction petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or are otherwise interested in the outcome of the petition, and

(5) whether the affidavits contradict evidence proffered by the defense at trial." *Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756 (1st Dist. 1994).

**{¶52}** Two of the *Calhoun* factors, which call into question the veracity of Glenn's affidavit, are present in this case. First, the Glenn affidavit relies on hearsay regarding the alleged threats of Glenn's prosecution by Prosecutor Desmond. Second, defense counsel argued at trial that Glenn shot the victim.

**{¶53}** The *Calhoun* Court further held:

A trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. . . . To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended.

*Calhoun*, 86 Ohio St.3d 279 at 284-285.

**{¶54}** Moreover, we observed in *State v. Brown,* 2010-Ohio-405 (7th Dist.):

"Newly discovered evidence must do more than merely impeach or contradict evidence at trial, and there must be some compelling reason to accept a recantation over testimony given at trial." *State v. Fortson*, 8th Dist. No. 82545, 2003-Ohio-5387, 2003 WL 22312206, ¶ 13. "[N]ewly discovered evidence which purportedly recants testimony given at trial is 'looked upon with the utmost suspicion.' " *State v. Germany* (Sept. 30, 1993), 8th Dist. No. 63568, 1993 WL 389577, *6, quoting *United States v. Lewis* (C.A.6, 1964), 338 F.2d 137, 139. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray*, 8th Dist. No. 92646, 2010-Ohio-11, 2010 WL 27872, ¶ 29, citing *State v. Jones*, 10th Dist. No. 06AP-62, 2006-Ohio-5953, 2006 WL

3240659, ¶ 25, and *United States v. Earles* (N.D.Iowa, 1997), 983 F.Supp. 1236, 1248.

*Id.* at ¶ 20.

**{¶55}** First, it is important to note that Ohio appellate courts have held that perjury alone is insufficient to establish a constitutional violation for the purposes of a postconviction petition. A petitioner must demonstrate the state was aware the testimony offered was perjurious.

**{¶56}** Glenn avers his identification of Appellant as the perpetrator was a consequence of Prosecutor Desmond's threat to prosecute Glenn for the fatal shooting. However, the record is replete with Glenn's multiple identifications of "Reg" as the perpetrator immediately following the shooting to Officer DiMaiolo, then to the detectives who interviewed Appellant at the police station. Moreover, Glenn directed Officer DiMaiolo to Appellant's residence, then Glenn selected Appellant's photograph from a photo array.

**{¶57}** There is no evidence in the record to establish Prosecutor Desmond was involved in the case at that early stage, and Glenn's affidavit does not establish when Prosecutor Desmond made the alleged threat. Moreover, Glenn does not aver that he originally identified Appellant in error, then realized he was mistaken, and sought to alter his original identification from the day the crime occurred.

**{¶58}** In the absence of clear and convincing evidence to establish Glenn's identification of Appellant was the result of Prosecutor Desmond's threats of Glenn's prosecution, we find Appellant has failed to fulfill the second requirement to establish the jurisdiction of the trial court to consider his second successive petition. Where a petitioner seeking leave to file a successive postconviction petition has not articulated a constitutional error at trial, he cannot satisfy R.C. 2953.23(A)(1)(b). *State v. Johnson*, 2022-Ohio-81, ¶ 21 (8th Dist.).

**{¶59}** Further, Glenn's purported inability to identify Appellant as the perpetrator does not contradict other evidence offered at trial. The victim identified Appellant as the perpetrator to his mother. It is undisputed the vehicle driven by the perpetrator was owned

by Appellant.  Finally, Glenn conceded he was expecting to be the subject of a gun attack as a result of enmity between Glenn and Appellant's family.

{¶60}  In summary, we find Appellant has not demonstrated he was unavoidably prevented from discovering the contents of the Glenn affidavit within the time period prescribed by the postconviction statute.  We further find Appellant has not offered clear and convincing evidence of a constitutional violation, as the Glenn affidavit does not establish Glenn's identification of Appellant as the perpetrator was the result of Prosecutor Desmond's threats. Finally, additional evidence offered at trial supports Appellant's conviction.  Accordingly, the judgment entry of the trial court dismissing the Appellant's second postconviction petition for lack of jurisdiction is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

[Cite as *State v. Everson*, 2025-Ohio-2628.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**