[Cite as *State v. Birt*, 2026-Ohio-2224.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-05-041 |
| vs. | : | OPINION AND JUDGMENT ENTRY 6/15/2026 |
| JERRY BIRT, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-03-0417

Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Jerry Birt, pro se., for appellant.

# **O P I N I O N**

**BYRNE, P.J.**

{¶ 1}   Jerry Birt appeals from the decision of the Butler County Court of Common Pleas, General Division, which denied his motion for leave to file an untimely motion for a new trial. For the reasons discussed below, we sustain Birt's first and second assignments of error and remand for further proceedings.

## I. Factual and Procedural Background

{¶ 2} In 2011, a Butler County grand jury indicted Birt on five counts of rape, one count of attempted rape, one count of intimidation, one count of operating a vehicle under the influence, and one count of reckless operation. The sexual offense counts were based on allegations that between 2005 and 2011, Birt sexually abused his daughter, "Teresa," who was seven or eight years old when the abuse started.[1] The allegations included acts of fellatio and anal and vaginal intercourse.

{¶ 3} In November 2011, a three-day jury trial commenced. Teresa (who would have been 13 years old at the time) testified. So did a witness, Michael Morningstar, who testified that he witnessed Birt molesting Teresa. At the trial's conclusion, the jury found Birt guilty of each offense, with the exception of the count of operating a vehicle under the influence, for which he was found not guilty.

{¶ 4} Following the jury's verdict, Birt moved for leave to move for acquittal and a new trial. Within the motion for leave, Birt presented the court with his substantive arguments in support of his request for acquittal or a new trial. Birt alleged that the State had submitted insufficient evidence that Birt engaged in sexual conduct with Teresa. The arguments largely focused on Teresa's testimony, including her admission on cross-examination that she had previously reported Birt for sexually abusing her when she was seven years old and that she had recanted, stating that her mother told her to report sexual abuse so that she could gain custody.

{¶ 5} The trial court overruled Birt's motion for leave for acquittal and/or a new trial, finding that the State had presented sufficient evidence to convict Birt. The trial court later sentenced Birt to a prison term.

---

1. "Teresa" is a pseudonym adopted in the opinion for purposes of privacy and readability. *In re A.M.*, 2023-Ohio-1523, ¶ 1, fn. 1 (12th Dist.); *The Supreme Court of Ohio Writing Manual*, § 16, at 115 (3d. Ed. 2024).

{¶ 6}   Birt directly appealed his conviction to this court in 2012. In that appeal, Birt challenged the manifest weight of evidence supporting the rape and attempted rape convictions. *State v. Birt*, 2013-Ohio-1379, ¶ 37 (12th Dist.). We affirmed, finding that the conviction was supported by the greater weight of the evidence. *Id*. at ¶ 49. We observed that the victim testified as to each count of rape and attempted rape, and the victim's testimony was corroborated by the testimony of Morningstar, who testified that he walked into Birt's bedroom and observed Birt and Teresa engaged in an act of fellatio. *Id*. at ¶ 41-45. We also noted evidence, via a rape kit conducted in March 2011, that Birt was a major contributor of a DNA mixture swabbed from Teresa's right breast. *Id*. at ¶ 48.

{¶ 7}   This court did sustain one of Birt's assignments of error, which challenged the sufficiency of the evidence supporting Birt's conviction for intimidation of a crime witness. *Id*. at ¶ 22. In support of that charged offense, Morningstar testified that on the same day he observed Birt and Teresa engaged in sexual conduct, Birt twice attempted to strike Morningstar with his car, stating "This ain't over. I'm going to fucking kill you." *Id*. at ¶ 20. We reversed this conviction based on a lack of evidence that any police investigation had begun at the time of the intimidating acts. *Id*. at ¶ 20-21.[2]

{¶ 8}   In October 2019, Birt filed a petition for postconviction relief ("2019 PCR Petition") and also moved for leave to submit a delayed postconviction petition. In the 2019 PCR petition, Birt set forth three specific claims for relief, including allegations of judicial bias, ineffective assistance of counsel, and cruel and unusual punishment. But Birt also attached to his 2019 PCR Petition and his motion for leave, evidence regarding Teresa recanting and disavowing her trial testimony. To be clear, this recantation of Teresa's trial testimony was distinct from her pretrial recantation of her earlier accusation

---

2. The intimidation statute, R.C. 2921.04(B) has since been amended to include attempts to intimidate a witness regardless of whether a criminal action or proceeding is pending.

of sexual abuse by Birt, about which she testified at trial.

{¶ 9} Attached to his motion for leave to submit a delayed postconviction petition, Birt included a signed, notarized letter allegedly written by Teresa in which she stated that Birt was prosecuted and went to prison "for something he didn't do." Teresa explained that her stepmother told her to lie so that Birt would go to jail and so she could go live with her biological mother. She stated that the day the investigation began, it was Morningstar who "started to touch me and started to kiss me" and that Birt walked in on them and was trying to protect her.

{¶ 10} Birt also attached a notarized letter, dated in 2019, from a sibling. The letter indicated that Teresa had contacted Teresa's mother and told her that she lied about Birt so that she could live with her mother.

{¶ 11} Birt also attached a notarized letter dated September 3, 2019, from a person identifying themselves as Teresa's cousin, which stated that Teresa "confessed that she lied on [Birt] saying she was [raped]" in order to move back in with her mother.

{¶ 12} The trial court analyzed Birt's 2019 PCR Petition and his motion for leave to submit a delayed postconviction relief petition pursuant to R.C. 2953.23 ("Successive Petition Statute"). The trial court denied the 2019 PCR Petition, finding it untimely, and noted that "[a] defendant's failure to either timely file a petition for post-conviction relief or meet his burden under R.C. 2953.23(A)(1) deprives a trial court of jurisdiction to entertain the petition." Further, the trial court found that "recantation of a key trial witness does not rise to the level of a constitutional violation that is required before a trial court is able to grant post-conviction relief." Finally, the trial court found Birt's evidence "fail[ed] to explain his delay in filing his [2019 PCR Petition] or any support that the defendant was unavoidably prevented from discovering the facts or timely presenting them." We later denied Birt's motion to file a delayed appeal from the denial of his 2019 PCR Petition.

Entry Denying Motion to File Delayed Appeal, Butler No. CA2020-11-110 (Dec. 22, 2020).

{¶ 13} Several years later, Birt applied for DNA retesting of the rape kit swabs introduced into evidence at his trial. Birt claimed that the swabs included DNA from an unidentified man. Later that year, Birt moved to supplement the record concerning his motion for DNA testing. Birt claimed to have two videos of Teresa and a letter from Teresa, in which Teresa denied that Birt had sexually abused her.

{¶ 14} The trial court denied the motion for DNA testing, noting that Birt's DNA was found on the victim and as such, this was not a case where additional DNA testing could exclude Birt. The court further found that even if additional DNA testing established the presence of another individual's DNA, such a result would not be outcome determinative, but only establish that someone else had contact with Teresa.

{¶ 15} In August 2024, Birt moved for leave to file a motion for a new trial ("2024 Motion for Leave").[3] This is the motion at issue in this appeal. Birt also filed the corresponding motion for a new trial, prior to receiving the trial court's leave to do so.

{¶ 16} To his 2024 Motion for Leave, Birt attached five affidavits, a letter allegedly written by the victim to the Ohio Innocence Project, records from the Tennessee Department of Children's Services, and two videos of Teresa in which she is said to have recanted her claims against Birt.[4] Generally, these documents alleged that Teresa recanted her allegations of sexual abuse against Birt, had made false allegations of abuse against others, and had a history of lying.

---

3. Birt also filed a motion for a new trial.

4. The affidavits and other documentary attachments to Birt's motion are in our record and we have reviewed those materials. The two videos are not in our appellate record, despite our best efforts to locate the exhibits. Birt identified the videos as "Exhibit J" in his 2024 Motion for Leave and references them as being contained on a DVD. We contacted the common pleas court and the clerk of courts. Both denied having any record of the DVD being filed. The clerk indicated that they did not have any record of receiving a DVD along with Birt's filing and that if a DVD had been filed, there would be some notation of the docket, but there was apparently none.

{¶ 17} In April 2025, the trial court denied Birt's 2024 Motion for Leave. The court found that the supporting documentation – the affidavits, records, and purported videos –

> add nothing to the sole question before the court - that is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial. The "substance" of the supporting documents add nothing to the question as to when the defendant became aware of the evidence, how he was prevented from timely discovering the evidence, how he was unavoidably prevented from discovering the evidence sooner and what steps, if any, he took to discover the evidence.
>
> In addition, most of the supporting documentation is similar to or the same as those previously submitted and considered by the court in the defendant's 2019 PCR petition and are barred by res judicata and/or law of the case.

{¶ 18} On this basis, the court denied Birt's 2024 Motion for Leave, thus denying him the opportunity to have the merits of his motion for a new trial considered by the trial court. Birt appealed, raising three assignments of error.

## II. Law and Analysis

### A. Motion for Leave to File a Motion for a New Trial

{¶ 19} Birt's first assignment of error states:

> THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING BY FAILING TO ADDRESS ALL OF THE EVIDENCE UNDER THE PROPER STANDARD FOR FILING AND UNAVOIDABLE PREVENTION OF DISCOVERY; AN ABUSE OF DISCRETION, DENIAL OF DUE PROCESS AND FUNDAMENTAL FAIRNESS UNDER THE FOURTEENTH AMENDMENT.

{¶ 20} In support of his first assignment of error, Birt argues that the trial court abused its discretion in denying his 2024 Motion for Leave when it found that the "substance" of his supporting affidavits and documentation did not establish by clear and convincing proof that he was unavoidably prevented from discovering the evidence on

which he sought to base his motion for a new trial. Birt argues that the affidavits and other documents demonstrate that these documents were unknown until 2013 or later, or well-beyond the 120-day requirement of the Crim. R. 33.

### 1. Crim.R. 33 and Motions for Leave to Move for a New Trial Based on Newly Discovered Evidence

{¶ 21} Crim.R. 33 governs the procedures for granting a new trial. A new trial may be granted on the defendant's motion, "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6).

{¶ 22} The rule provides that motions for a new trial based on newly discovered evidence "shall be filed within one hundred twenty days after the day upon which the verdict was rendered . . . ." Crim.R. 33(B). However, the rule provides an exception to this 120-day rule.

{¶ 23} Pursuant to this exception, an untimely filing of a motion for a new trial based on newly discovered evidence is permitted "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely . . . ." *Id*. The rule further provides that in this circumstance, the filing must be made "within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id*.

{¶ 24} Crim.R. 33(B) thus establishes a two-step process for an untimely motion for a new trial based on newly discovered evidence. *State v. Hatton*, 2022-Ohio-3991, ¶ 29. The defendant must first move for leave to file the motion for new trial and establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the 120-day period. *Id*. at ¶ 28. If the court finds the defendant has

met this burden and grants leave to move for a new trial, the defendant must file the motion for new trial within seven days. *Id*.

**{¶ 25}** When a defendant seeks leave to file an untimely motion for a new trial under Crim.R. 33(B), "the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *Id*. at ¶ 30, citing *State v. Bethel*, 2022-Ohio-783, ¶ 41. The sole question before the trial court considering whether to grant leave is "whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id*.[5]

**{¶ 26}** Appellate review of a trial court's ruling on a motion for leave to file a motion for a new trial is conducted under the abuse-of-discretion standard. *Hatton* at ¶ 29. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, "[c]ourts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38-39.

### 2. The Meaning of "Unavoidably Prevented"

**{¶ 27}** In the context of Crim.R 33 motions for leave to move for a new trial based on newly discovered evidence, courts have defined "unavoidably prevented" to mean that "the party had no knowledge of the existence of the ground supporting the motion for a new trial and, exercising reasonable diligence, could not have learned of its existence within the time prescribed for filing the new-trial motion." *State v. Rainey*, 2025-Ohio-2608,

---

5. The Ohio Supreme Court has also noted that Crim.R. 33(B) does not establish any time frame in which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence. The court disagreed with those courts who had imposed an additional "reasonable-time filing requirement" under Crim.R. 33(B). *Bethel*, 2022-Ohio-783 at ¶ 55.

¶ 14 (1st Dist.), citing *State v. Brand*, 2025-Ohio-669, ¶ 21 (1st Dist.); *State v McKnight*, 2021-Ohio-2673, ¶ 11 (4th Dist.).

{¶ 28} In determining the meaning of "unavoidably prevented" in Crim.R. 33(B), we find guidance in the Ohio Supreme Court's analysis of that phrase in *State v. Johnson*, 2024-Ohio-134. In *Johnson*, the Ohio Supreme Court addressed a postconviction relief ("PCR") petitioner's duty under the Successive Petition Statute to establish that the petitioner was "unavoidably prevented" from timely discovering facts in support of the untimely or successive PCR petition. Though *Johnson* involved a PCR petition, rather than a Crim.R. 33(B) motion for leave to move for a new trial like the one at issue in the case before us, the Ohio Supreme Court has observed that "[t]he 'unavoidably prevented' requirement in Crim.R. 33(B) mirrors the 'unavoidably prevented' requirement in [the Successive Petition Statute]". *Bethel*, 2022-Ohio-783, at ¶ 59, quoting *State v. Barnes*, 2018-Ohio-1585, ¶ 28 (5th Dist.). Accordingly, courts have found that the *Johnson* analysis about the meaning of "unavoidably prevented" in the Successive Petition Statute also applies to the analysis of "unavoidably prevented" in Crim.R. 33(B). *State v. Allen*, 2024-Ohio-970, ¶ 33 (8th Dist.). We will do the same.

{¶ 29} In *Johnson*, the Ohio Supreme Court held that a PCR petitioner meets their "unavoidably prevented" burden by demonstrating that "he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence." *Johnson* at ¶ 18. The supreme court noted that appellate courts had varying approaches to the sort of evidence that was sufficient to establish that a petitioner was unavoidably prevented from obtaining the evidence in support of the petition, and whether a recanting witnesses' affidavit dated after the PCR-petition deadline had passed was sufficient to satisfy that standard. *Id*. at ¶ 19-22. Some courts held that an affidavit recanting testimony was, by itself, sufficient to demonstrate

unavoidable prevention if the affidavit was obtained after the PCR petition deadline. *Id*. at ¶ 21. But other courts held that an affidavit dated beyond the deadline, alone, failed to offer a sufficient explanation as to why the evidence could not have been obtained sooner, and was not prima facie evidence that the defendant was unavoidably prevented from discovering the statement during the period for filing a motion for a new trial. *Id*. at ¶ 22.

{¶ 30} In resolving this issue, the supreme court focused on the adverb "unavoidably" and how that term modified the verb "prevented." *Id*. at ¶ 24. The court found that "unavoidable" means "not avoidable" or "inevitable." *Id*., citing *Merriam-Webster's Collegiate Dictionary* 1360 (11th Ed.2003). The court also found that "inevitable" means "incapable of being avoided or evaded." *Id*., citing *Merriam*'s at 638. Therefore, a petitioner must show that "any delay in discovering the facts undergirding the petition was 'incapable of being avoided or evaded.'" *Id*. The court then explained,

> The light that an affidavit's date sheds on that issue is dim, at best. A date merely reveals when the affidavit was executed or provided, not when the testimony it contains became available. Without an explanation of how the recantation was discovered, the information essential to the R.C. 2953.23 inquiry remains cloaked in darkness. It is this type of information that bears on the petitioner's ability to avoid delay in discovering recanted testimony.

*Id*. at ¶ 25.

{¶ 31} Therefore, the Ohio Supreme Court held that a PCR petitioner is required to "submit evidence of specific facts beyond the supporting affidavit's date to explain why the petitioner was unable to timely obtain an affidavit from the recanting witness." *Id*. at ¶ 27. The court further held that the petitioner's duty to present sufficient evidence to satisfy this burden is at the time of the filing of the petition, because "If testimony can be elicited at a hearing, it can be attested to in an affidavit." *Id*. at ¶ 26.

{¶ 32} In *Johnson*, the Ohio Supreme Court found that the petitioner did not meet

his burden of demonstrating unavoidable prevention through the mere presentation of a recanting witness' affidavit. *Id*. at ¶ 28. The court observed that the affidavit contained no information regarding when or how the witness notified the petitioner of the content of the affidavit and shed no light on whether the witness contacted the petitioner, or vice versa, or when such contact occurred. The court found that the petitioner's statements, in the PCR petition, that the affidavit was "not available" "until this time" and "was not discoverable" until the witness "voluntarily presented it" was not supported by any averment in the affidavit. *Id*. at ¶ 29.

{¶ 33} We will now turn to applying *Johnson*'s understanding of "unavoidably prevented" to the Crim.R. 33(B) motion before us.

### 3. The Evidence Submitted by Birt in Support of his Motion for Leave

### a. Jerry Birt's Affidavit

{¶ 34} In support of his 2024 Motion for Leave, Birt submitted his affidavit, in which he averred that he had obtained newly discovered evidence of his innocence. He stated that this evidence consisted of sworn statements from multiple witnesses "related to events that post-dated my trial by more than 120 days."

### b. Bobbie Chambers' First Affidavit

{¶ 35} Chambers' notarized affidavit is dated January 18, 2024. Chambers describes Birt as her brother. In her affidavit, Chambers identifies two text message exchanges, which were attached to the affidavit. Chambers identifies the first exchange as occurring between herself and Teresa. In the text, Teresa states: "I just want to apologize for being immature and lying. Thats not me anymore. I learnt my lesson. And hopefully you can forgive me. But if not that's cool I'm still going to help my father get out of prison. For something he didn't do." In his 2024 Motion for Leave, Birt claims that this text message was sent in 2016. However, there is nothing in Chambers' affidavit or the

- 11 -

text message attachment identifying the date of the exchange.

{¶ 36} Chambers identifies the second text message exchange as between herself and Teresa's mother. In it, Chambers asks Teresa's mother why Teresa wants to go on the Dr. Phil television show. Teresa's mother responds, "She said that she wants to bring us back together as a family I [sic] to prove to me that she's not lying about Jerry." Again, the date of this text exchange is not apparent from either the text itself, nor it is averred to in the affidavit.

### c. Bobbie Chambers' Second Affidavit

{¶ 37} Chambers' second affidavit is dated January 18, 2024. In it, she states that Teresa contacted Teresa's mother and told her she lied about Birt so that she could live with her mother. Apparently referencing this same conversation between Teresa and her mother, Chambers avers that "Her father [Birt] did find [Teresa] and Michael Morningstar in a sexual act." Chambers states that Teresa's mother, "did give me that text."

{¶ 38} Three screenshots of a text message exchange are appended to Chambers' second affidavit. This is apparently the exchange referenced in Chambers' second affidavit. The exchange appears to be between Teresa and Teresa's mother. The texts themselves do not identify the year, only the date (January 17) and the time of the messages (between 8:59 p.m. and 9:45 p.m.). The bottom of the text message displays the date January 30, 2016. Presumably, this is the date that these messages were forwarded to Chambers, though this is unclear from Chambers' affidavit.

{¶ 39} In the exchange, Teresa's mother states that Birt "destroyed what we used to have by doing what he done to you." Teresa then responds, "Mom he didn't do that. I only said that to [sic] because I didn't want to get caught with Michael Morningstar." Teresa's mother then questions why "his" (presumably referring to Birt) DNA was found on Teresa. Teresa's mother then states she does not believe Teresa. Teresa responds, "I

confessed." Teresa's mother then states, "but why did you wait five years to do that." Teresa responds, "Because I was scared. And I didn't want to live with him. I wanted to live with you. . ."

### d. Bobbie Chambers' Third Affidavit

{¶ 40} Chambers' third affidavit is dated February 26, 2024. In it, she describes being contacted by Teresa in 2016. Teresa told her that she purchased a bus ticket from Tennessee to Ohio and wanted Chambers to take her to the Middletown Police Department.

{¶ 41} Chambers then describes going with Teresa and another person (Amy Gibson), to the Middletown Police Department and speaking with a detective. Chambers avers that Teresa told the detective that she was there to recant her story about Birt raping her, that it never happened, and that her stepmother made her lie. Chambers avers that the detective then took Teresa to a room and interviewed her separately from Chambers and Gibson. When the detective and Teresa emerged, Teresa told Chambers that she had repeated her same recantation to the detective. The detective then told Teresa to "leave it," that they had the right person in prison, and he would not go "any further with it."

### e. Affidavit of Amy Gibson

{¶ 42} Amy Gibson's affidavit is dated March 1, 2024. In it, she describes the visit to the Middletown Police Department and Teresa's statements at the police department recanting her trial testimony. Her description matches the description in Chamber's third affidavit.

### f. Stephanie King's Affidavit

{¶ 43} Stephanie King's affidavit is dated June 17, 2024. King states that she is a senior legal assistant with the Ohio Innocence Project. She states that, in her role at the

Ohio Innocence Project, she is familiar with the Ohio Innocence Project's internal procedures regarding the creation and maintenance of records, and that she reviewed those records kept by the Ohio Innocence Project in the ordinary course of business. King stated that the records show that the Ohio Innocence Project received a "document" in early 2018. The "document," which was attached to King's affidavit, is a letter, signed by Teresa on December 28, 2017, and notarized that same day. King further stated that OIP mailed a copy of the original letter to Birt at the London Correctional Institution on January 24, 2018.

{¶ 44} In the letter, Teresa states that Birt was prosecuted and in prison for "something he didn't do." She goes on to state that her stepmother told her to lie so that Birt would go to jail and she could live with her actual mother. Teresa states that on the day "everything went down," Birt was actually trying to protect her from Michael Morningstar and that Michael had started to "touch me and started to kiss me" when Birt walked in. She stated that Birt had never done anything to her and that she was "telling the truth now because I didn't know it was wrong back then."

### g. Affidavit of Alexis Midkiff

{¶ 45} Alexis Midkiff's affidavit is dated February 11, 2024. In it, she describes a 2018 conversation with Teresa in which Teresa admitted that she lied about Birt, that he had never done anything sexual to her, and that she was going to do the "right thing" and get him out of prison. She indicated that her stepmother had told her to lie.

### h. Tennessee Children Services Records

{¶ 46} Certain Tennessee children services documents were attached to Birt's affidavit. These documents, which are unverified, contain case summary notes about Teresa's placement in the Tennessee Children's Services Agency. They generally indicate a history of Teresa making allegations about her foster parents and indicate manipulation

to change her placement. The documents appear to be dated in the 2012 time frame, but a time stamp indicates that the documents were generated in January 2014.

### i. Affidavit of Ryan Fahrenkamp

{¶ 47} In an affidavit dated February 25, 2024, Fahrenkamp describes being in jail with both Birt and Morningstar in 2011. Fahrenkamp claims to have knowledge that Birt's attorney colluded with Morningstar to have Morningstar write a letter to the prosecutor stating that he saw Birt raping his daughter.

### 4. Analysis

{¶ 48} Upon review, we conclude that certain affidavits and supporting documentation submitted by Birt establish by clear and convincing evidence that Birt had no knowledge of the existence of the grounds supporting his 2024 Motion for Leave and that Birt, exercising reasonable diligence, could not have learned of the existence of this evidence within the time prescribed for filing a timely motion for new trial. *Rainey*, 2025-Ohio-2608, at ¶ 14 (1st Dist.); Crim.R. 33(B).

{¶ 49} Specifically, Bobbie Chambers' third affidavit and the affidavit of Amy Gibson indicate that these individuals witnessed Teresa recanting her allegations against Birt to a police detective. Because this event occurred in 2016, Birt could not have obtained or discovered evidence related to this specific recantation prior to the 120-day period set forth in Crim.R. 33.

{¶ 50} Moreover, the affidavit of Stephanie King establishes that the Ohio Innocence Project received a letter from Teresa recanting her allegations in 2018 and promptly forwarded the letter to Birt. The letter is signed by Teresa and notarized by a Tennessee State notary. The letter is dated December 2017. Based on the date, the letter could not have been discovered by Birt during the 120-day period following the jury verdicts.

{¶ 51} Furthermore, unlike in *Johnson*, Birt did not simply rely on the date of these documents in demonstrating that he was unavoidably prevented from discovering this information. Instead, the content of each document supplied the necessary basis for concluding that Birt could not have obtained the information within the 120-day time limit. Specifically, the Middletown Police Department recantation did not occur until 2016. And Teresa did not provide her notarized letter to the Ohio Innocence Project until 2018.

{¶ 52} That being said, the Chambers and Gibson affidavits and Teresa's notarized letter do not conclusively establish whether Birt could or could not have obtained the same recantation evidence from Teresa in the 120-day period following his conviction. The record supports the conclusion that Birt was aware of Teresa's alleged propensity to lie about and later recant claims of sexual misconduct during the proceedings in the trial court. Specifically, in his December 2011 motion for acquittal and a new trial, Birt referred to Teresa admitting in cross-examination that she had previously recanted claims of sexual abuse. And in his second claim for relief in his 2019 PCR Petition, Birt asserted that his trial counsel was ineffective because, among other things, he "failed to investigate [or] follow through with Judges request to confirm state victim recanted her statement."

{¶ 53} To this point, Birt counters that Teresa was a minor during the 120-day period following the jury verdicts and that she did not have the mental capacity to fully understand the ramifications of her actions. He further argues that he could not have contacted Teresa in the 120-day period following the jury verdicts because (1) he was incarcerated, (2) Teresa was placed in several Tennessee foster homes following the trial, and (3) that he "cannot just request a victim to recant, especially a father to his minor daughter." He argues that documentary evidence, on its face, demonstrates that the majority of evidence submitted in support of his motion for leave related to events that did not occur and were unknown during the 120-day period.

{¶ 54} In support, Birt cites *State v. Thompson*, 2021-Ohio-4431 (8th Dist.). Thompson was convicted in 2000 of two counts of rape of his seven-year-old son and sentenced to life in prison. *Id*. at ¶ 2-3. Twenty years later, Thompson filed a motion for leave to file a motion for a new trial, and argued that in October 2019, his son recanted his trial testimony made two decades earlier. *Id*. at ¶ 5. In the affidavit, the son alleged that Thompson had not raped him, but rather an older cousin had molested him, and the cousin told him to say that someone molested him, so he accused his father. *Id*. The trial court denied Thompson's motion and request for a hearing. *Id*. at ¶ 6.

{¶ 55} On appeal, Thompson argued that he was unavoidably prevented from discovering evidence that he did not molest the son. *Id*. at ¶ 13. He argued that his son was threatened and intimidated by an older male cousin to cover up the fact that the cousin molested the son. He also argued that he lacked access to the son because of his incarceration and was entitled to a hearing because he could not have known the son's testimony was coerced. *Id*.

{¶ 56} The Eighth District sustained Thompson's appeal, finding that he submitted evidence that on its face showed he was unavoidably prevented from discovering the evidence of his son's recantation sooner. *Id*. at ¶ 14. The court found the timeline of events supported Thompson's motion for leave, including Thompson's incarceration since 2000, his son reaching adulthood and wrestling "with the dilemma of telling his truth" many years after the trial had concluded, the son discussing the issue with other relatives, and the son's affidavit containing information not in the trial record. *Id*. at ¶14.

{¶ 57} Birt also relies on *State v. Bentley*, 2016-Ohio-3290 (11th Dist.). Bentley was convicted on eight counts of rape of his minor daughter, who testified at trial while still a minor. *Id*. at ¶ 1-2. Over a decade later, Bentley's daughter recanted her testimony in a sworn affidavit, alleging caseworkers from children services told her to state her father

had raped her and if she did not, she would never see her mother or sister again. *Id*. at ¶ 3.

{¶ 58} The Eighth District Court of Appeals found that the documents attached to Bentley's motion "clearly support[ed] a finding of unavoidable prevention that would normally sustain a motion for leave or, at the very least, an evidentiary hearing on the issue." *Id*. at ¶ 12, citing *State v. McConnell*, 2007-Ohio-1181, ¶ 15 (2nd Dist.) The Eighth District cited case law for the proposition that "'even in the exercise of reasonable diligence,' a defendant has no control over when a witness may decide to recant." *Bentley* at ¶ 12, quoting *State v. Alexander*, 2012-Ohio-4468, ¶ 19 (11th Dist.).

{¶ 59} This line of cases differs both procedurally and substantively from *Johnson*. First, *Johnson* was a petition for postconviction relief filed under the Successive Petition Statute—not a motion for leave for a motion for a new trial under Crim.R. 33. *Johnson*, 2024-Ohio-134, at ¶ 6. Thus, *Johnson* is not binding precedent on this case, which does not involve a PCR petition subject to the Successive Petition Statute. While the analysis of the question of whether a defendant was "unavoidably prevented" from timely discovering evidence is analyzed in a similar manner under Crim.R. 33(B), the requirement to assert a constitutional error under the Successive Petition Statute was also a barrier to jurisdiction in *Johnson*, and that requirement is not at issue in Crim.R. 33(B). Second, *Johnson* involved an adult victim of a crime who allegedly recanted—not a child who recanted after reaching adulthood. *Id*. at ¶ 4, 7.

{¶ 60} Upon consideration, we agree with the general propositions and analysis set forth in *Thompson*, *Bentley*, *McConnell*, and *Alexander* – Birt, while incarcerated, could not reasonably be expected to contact or attempt to obtain a recanting affidavit from his minor daughter in the 120-day period following the jury verdict in 2011. A parent who has been convicted of molesting their own child should not be making efforts to contact

that child. "As a policy matter, we are reluctant to embrace a rule that would require a father convicted of raping his [minor] child to pursue the victim to obtain a recantation of her trial testimony." *McConnell*, 2007-Ohio-1181, at ¶ 15 (2nd Dist.).

{¶ 61} The facts of this case are important and, like *Thompson* and *Bentley*, reflect a witness who provided trial testimony while a minor, and, upon reaching the age of majority, recanted that testimony. The affidavits attached to Birt's motion indicate that Teresa began recanting her trial testimony to various people, beginning in or around 2016, well after the 120-day limit set forth in Crim.R. 33. Of most significance, in 2016, Teresa, who would have turned 18 that year, allegedly recanted to a Middletown police detective in front of two witnesses. The following year, Teresa signed a notarized letter recanting her allegations and subsequently provided it to the Ohio Innocence Project. The evidence related to these recantations could not have been obtained during the 120-day period following Birt's conviction in 2011 and it is not reasonable to fault Birt for not having obtained or not having attempted to obtain this information while Teresa was a minor.

{¶ 62} The State focuses its argument on appeal on the fact that Birt's evidence in support of his 2024 Motion for Leave does not address the evidence at trial supporting Birt's convictions. Specifically, the State refers to Morningstar's testimony corroborating Teresa's trial testimony and Birt's DNA evidence found on Teresa's breast. Likewise, the State argues much of Birt's evidence could be inadmissible hearsay (without discussing any hearsay exceptions that might apply). However, those are merit questions, which are improper when evaluating a motion for leave to file a motion for new trial under Crim.R. 33. At this stage the trial court should only consider the defendant's support for being "unavoidably prevented" from discovering the evidence. *Hatton*, 2022-Ohio-3991, at ¶ 30.

{¶ 63} As such, we find that Birt established, under Crim.R. 33(B), clear and convincing proof that he had no knowledge of the existence of Teresa's Middletown Police

Department recantation and her letter to the Ohio Innocence Project in the 120-day period following the guilty verdicts. *Rainey*, 2025-Ohio-2608, at ¶ 14 (1st Dist.); Crim.R. 33(B). Therefore, the trial court abused its discretion in overruling Birt's motion for leave.

{¶ 64} Accordingly, we sustain Birt's first assignment of error and remand with instructions that the court consider and rule upon Birt's motion for a new trial.[6]

### B. Res Judicata and Law of the Case

{¶ 65} Birt's second assignment of error states:

> THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING ON THE BASIS OF RES JUDICATA AND/OR LAW OF THE CASE WHEN THE EVIDENCE WAS CLEARLY UNAVAILABLE WITHIN THE TIME PERIOD PRESCRIBED BY CRIM.R. 33, AS APPELLANT HAD NO KNOWLEDGE OF THE EVIDENCE, OR IT DID NOT EXIST DURING THE TIME FOR FILING; AN ABUSE OF DISCRETION, DENIAL OF DUE PROCESS AND FUNDAMENTAL FAIRNESS UNDER THE FOURTEENTH AMENDMENT.

{¶ 66} In its decision denying Birt's Motion for Leave, the trial court found, in the alternative, that Birt's recantation-based arguments supporting his request for a new trial were barred by res judicata and/or law of the case doctrine. The court reasoned that Birt had presented similar evidence in support of his 2019 PCR Petition and his motion for leave to file that delayed petition. In support of his second assignment of error, Birt argues that the court's res judicata and law of the case conclusions were error because the evidence he presented in support of his 2024 Motion for Leave differed substantially from the evidence supporting his 2019 PCR Petition.

### 1. Res Judicata

---

6. We note a recent Ohio Supreme Court case has held that trial courts retain discretion under Crim.R. 33(A)(6) to determine whether or not an *oral* evidentiary hearing is required on a motion for a new trial. *State v. Bostick*, 2025-Ohio-5559, ¶ 20.

{¶ 67} "The doctrine of res judicata provides that a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding[,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction . . . ." *State v. Hagens*, 2025-Ohio-4989, ¶ 21 (12th Dist.), citing *State v. Wagers*, 2012-Ohio-2258, ¶ 10 (12th Dist.). The applicability of res judicata is a question of law; accordingly, we apply the de novo standard of review to a trial court's finding that an argument is barred by res judicata. *State v. Lindsey*, 2003-Ohio-811, ¶ 21 (12th Dist.).

{¶ 68} Res judicata applies to motions for a new trial. *Hatton*, 2022-Ohio-3991, at ¶ 22. But the presentation of new exculpatory evidence in support of a motion for leave to move for a new trial can defeat the application of res judicata. *See Hatton* at ¶ 22-25.

{¶ 69} The record contains no evidence or support for the argument that Birt "could have" raised Teresa's recantation on direct appeal, as there is no evidence before us that Teresa recanted her trial testimony during the trial. Birt's original appeal did raise the issue of Teresa's *prior* recantations of sexual abuse allegations, but this was merely an argument attacking Teresa's credibility at trial, not of a recantation by Teresa of her trial testimony. Therefore, Teresa's later alleged recantation of her trial testimony was outside of the record available on direct appeal, and nothing that happened at Birt's trial formed a basis for the trial court's res judicata finding in its denial of Birt's 2024 Motion for Leave.

{¶ 70} In support of his motion for leave to file his 2019 PCR Petition, Birt did submit evidence indicating that Teresa had recanted her allegations. And in denying that 2019 PCR Petition and the motion for leave to file a delayed petition, the trial court found that Birt had not demonstrated that he was unavoidably prevented from discovering the facts upon which he relied in seeking postconviction relief. The State argues that since

the "unavoidably prevented" requirement in the Successive Petition Statute mirrors the "unavoidably prevented" requirement in Crim.R. 33(B), then the trial court's finding with respect to the 2019 PCR Petition is res judicata for purposes of assessing Birt's 2024 Motion for Leave.

{¶ 71} In support of his 2019 PCR Petition, Birt asserted three claims: (1) judicial bias, (2) ineffective assistance of counsel, and (3) cruel and unusual punishment. But Birt *did not* raise Teresa's recantation as a claim for relief. Birt did attach recantation evidence to his 2019 PCR Petition. However, that recantation evidence did not relate to any of the three constitutional claims asserted in the petition. Moreover, the recantation evidence could not have been the basis for any claim for postconviction relief because Teresa's recantation, as presented in the 2019 PCR Petition, did not present a constitutional claim appropriate for postconviction relief proceedings.

{¶ 72} A victim's recantation of her previous testimony is analyzed under the rubric of perjury. *See Johnson*, 2024-Ohio-134, at ¶ 33. But perjury is not constitutional error unless the State knowingly used false or perjured testimony. *Id*. Birt did not allege in his 2019 PCR Petition, nor does he allege now, that the State knew that Teresa's testimony was false during the trial.

{¶ 73} Because Teresa's recantation was not asserted as a claim for postconviction relief in her 2019 PCR Petition, and Teresa's recantation evidence was not the basis for any of the three constitutional errors Birt asserted in the 2019 PCR Petition, the trial court's finding relative to unavoidable prevention with regard to that recantation evidence was dicta. Therefore, the trial court's 2019 finding of a failure to demonstrate unavoidable prevention does not have preclusive effect on Birt's 2024 Motion for Leave.

{¶ 74} Even if the 2019 unavoidable prevention finding was not dicta, there is a

substantive difference between the recantation evidence submitted in 2019 versus 2024. Unlike the 2019 PCR Petition evidence, Birt supported his 2024 Motion for Leave with sworn affidavits of two witnesses who personally observed Teresa recanting her allegations in front of a police detective. This evidence was not presented to the trial court in support of Birt's 2019 PCR Petition and was not simply "cumulative" evidence.

{¶ 75} Based on our analysis in response to Birt's first assignment of error, Birt demonstrated unavoidable prevention with regard to this new evidence, which was not presented to the trial court in Birt's 2019 PCR petition. Therefore, the unavoidable prevention finding in support of the trial court's decision on the 2019 PCR petition, even if was not dicta, would not have preclusive effect on the 2024 Motion for Leave.

{¶ 76} There is one final reason why the "unavoidable prevention" finding in the 2019 PCR Petition would not have preclusive effect on the 2024 Motion for Leave. The period within which unavoidable prevention is considered is much longer for an untimely petition for postconviction relief (i.e., 365 days from the time a transcript is filed in a direct appeal or 365 days after the expiration of the time to appeal if no direct appeal is taken) than for a Crim.R. 33 motion for leave to file a motion for a new trial (i.e., 120 days from the verdict). Thus, finding a failure to establish unavoidable prevention in the context of an untimely petition for postconviction relief does not necessarily address unavoidable prevention in the context of a motion for leave to file a motion for a new trial. Stated otherwise, the longer an offender has to discover evidence without doing so, the less likely it is that the offender was unavoidably prevented from the discovery. Therefore, "unavoidable prevention" for purposes of the Successive Petition Statute cannot always be equated with "unavoidable prevention" in the context of a Crim.R. 33(B) motion.

{¶ 77} To summarize, the trial court made an error of law by finding res judicata precluded Birt's motion for leave because (1) Teresa's alleged recantation is not part of

the trial record and could not have been raised on direct appeal; (2) no recantation claims were asserted in the 2019 PCR Petition and any findings relative to those claims were dicta; (3) the evidence in support of Birt's 2024 Motion for Leave differed substantively from that in support of the 2019 PCR Petition; and (4) "unavoidable prevention" under the Successive Petition Statute is measured by a much longer timeline than the same concept in a motion for leave to move for a new trial. Accordingly, we find that the court abused its discretion by finding that res judicata precluded Birt from moving for leave to move for a new trial on the basis of Teresa's alleged recantation.

## 2. Law of the Case Doctrine

{¶ 78} The trial court also concluded that Birt's 2024 Motion for Leave was barred by the law of the case doctrine. "Pursuant to [the law of the case] doctrine, the 'decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Settlers Walk Home Owners' Assn. v. Phoenix Settlers Walk, Inc.*, 2021-Ohio-4547, ¶ 17 (12th Dist.), citing *Mansour v. Croushore*, 2011-Ohio-3342, ¶ 25 (12th Dist.).

{¶ 79} In this case, no reviewing court has ever considered whether the evidence of Teresa's recantation of the allegations against Birt entitled him to a new trial, a hearing on a motion for leave to file a motion for a new trial, or in any other context. Therefore, the law of the case doctrine did not apply here, and the trial court erred in concluding that Birt's 2024 Motion for Leave was precluded by the law of the case doctrine.

{¶ 80} Having concluded that neither res judicata nor the law of the case doctrine applied to Birt's 2024 Motion for Leave, we sustain Birt's second assignment of error.

## C. Manifest Injustice

{¶ 81} Birt's third assignment of error states:

THE TRIAL COURT ERRED WHEN IT DENIED

APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION
FOR NEW TRIAL WITHOUT A HEARING ON THE BASIS OF
RES JUDICATA AND/OR LAW OF THE CASE DOCTRINE,
AS NEITHER ARE APPLICABLE TO A MANIFEST
INJUSTICE AND WHEN LIFE AND LIBERTY ARE AT STAKE;
AN ABUSE OF DISCRETION, DENIAL OF DUE PROCESS
AND FUNDAMENTAL FAIRNESS.

**{¶ 82}** In his third assignment of error, Birt argues that a "manifest injustice" exception applies to his case that would defeat the application of res judicata and the law of the case. However, given our resolution of the second assignment of error, this assignment of error is moot and need not be addressed. App.R. 12(A)(1)(c).

### III. Conclusion

**{¶ 83}** The trial court abused its discretion in denying Birt's motion for leave to file a motion for a new trial. Birt's evidence provided clear and convincing proof that he was unavoidably prevented from obtaining or discovering the recantation evidence discussed above within the 120-day period set forth in Crim.R. 33(B). Moreover, res judicata and the law of the case doctrine did not preclude Birt from moving for leave for a new trial on the grounds raised in his 2024 Motion for Leave.

**{¶ 84}** Judgment reversed and cause remanded for consideration of Birt's motion for a new trial.

M. POWELL and SIEBERT, JJ., concur.

## __J U D G M E N T   E N T R Y__

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for further proceedings consistent with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*